## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| RICHARD M. HILLER, | |
| Plaintiff, | 3:12 - CV- 1139 (CSH) |
| v. | |
| FARMINGTON POLICE DEPARTMENT, Individually; OFFICER JOANNE M. BLUMMETTI, Individually; and RACHAEL SIBLEY, Individually, | MARCH 13, 2014 |
| Defendants. | |

## ORDER

**HAIGHT, Senior District Judge:**

## I.  BACKGROUND

Plaintiff Richard M. Hiller brings this action *pro se*, seeking recovery for damages resulting from a motor vehicle incident with individual defendant Rachael Sibley on August 16, 2009 and the subsequent actions of the Farmington Police Department ("FPD") on that date.  Hiller brings negligence claims against Sibley and FPD Officer Joanne M. Blummetti, a variety of common law claims against Sibley, and intentional infliction of emotional distress and civil rights claims,  arising under 42 U.S.C. § 1983, against Blummetti and the  FPD.[1]  Due to his § 1983  federal statutory claims, Plaintiff asserts that this Court has "federal question" subject matter jurisdiction pursuant to

---

[1]   In addition to his § 1983 and underlying Constitutional claims,  Plaintiff asserts that his action is "brought pursuant to . . . the laws of the State of Wisconsin." Doc. 1, ¶ 1. Plaintiff does not, however, present, nor does the Court find on the face of the Complaint, any basis to apply Wisconsin law.

28 U.S.C. § 1331 and  28 U.S.C. § 1342(a)(3).[2]  Doc. 1, ¶ 2.

A.     **FACTS**

On August 16, 2009 at approximately 11:30 a.m.,  Plaintiff and his brother were riding their motorcycles on Routes 84 West and 4 in Farmington, Connecticut. Doc. 1, ¶ 9.  Plaintiff alleges that Defendant Sibley, who was driving a Black Honda, unlawfully passed both motorcycles on the ride side, forcing them into the left lane and "almost kill[ing] both Plaintiff Hiller and his brother Robert Hiller by her reckless driving." *Id.*, at ¶¶ 10- 14.  Sibley then allegedly "took off at a speed of 90MPH."  *Id.*, ¶ 14.

Plaintiff alleges that he pursued Sibley's vehicle in an effort to learn her "vehicle plate number in order to place a police complaint for reckless driving."  *Id.*, ¶ 15.  Because Sibley was allegedly traveling above the speed limit, Hiller claims he was forced to travel above the speed limit to "catch up to [her] at the traffic signal."  *Id.*, ¶ 16.  At a traffic intersection, Sibley climbed out of her vehicle and a confrontation erupted, in which Hiller admittedly "screamed at Defendant Sibley," asking "if she was drunk or on drugs."  *Id.* In response, Sibley allegedly waived a "clenched fist" at Plaintiff; and he replied by shouting, "You almost killed us[!]"  *Id.*, ¶ 17.   After additional

---

[2]  Pursuant to 28 U.S.C. § 1331, "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

The district courts shall also "have original jurisdiction of any civil action authorized by law to be commenced by any person: . . . [t]o redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States."  28 U.S.C. § 1343(a)(3).

In addition, pursuant to 28 U.S.C. § 1367, the Court may exercise supplemental jurisdiction over state law claims "that are so related to [the federal] claims in the action . . . that they form part of the same case or controversy."

skirmishing, the light at the traffic intersection turned green and Plaintiff departed the scene. *Id.*, ¶¶ 18-19. Later that day, Sibley contacted the FPD to make a complaint against Hiller regarding the incident.

At around 2:59 p.m., Defendant FPD Officer Blummetti contacted Plaintiff by calling his home phone and instructed him to visit the FPD to collect a summons that had been issued against him. Shortly thereafter a state trooper appeared at Plaintiff's door and also instructed him to visit the FPD to collect the summons. *Id.*, ¶ 20.

Plaintiff and his brother then phoned the FPD to give statements about the incident to Officer Blummetti. *Id.*, ¶ 21. Plaintiff alleges that during that conversation, Blummetti asked an "irrelevant question if Plaintiff Hiller grew up with a bunch of Hillers she knew in Tolland County," people with whom Blummetti had "some past incident." *Id.*, ¶ 24. Plaintiff claims that Blummetti failed to "conduct a professional, non[-]emotional interview" with him and "showed no concern" that Plaintiff and his brother "were almost killed by Defendant Sibley." *Id.*, ¶ 35. Plaintiff further alleges that the FPD failed to adequately train Officer Blummetti on interrogation methods and condoned her "indiscriminate acts causing constitutional violations to be perpetrated against [him]." *Id.*, ¶¶ 39-40.

Finally, at approximately 4:30 pm, Plaintiff reluctantly appeared at the FPD and filed his own complaint with respect to Sibley with a second shift police officer of the FPD. *Id.*, ¶ 32; *see also id.*, p. 23 ("Statement of Richard Hiller" to Officer K. Vincent). By that time, Blummetti's shift was over and, as she had indicated on the phone, "she would not be there and she was not going to wait." *Id.*, ¶ 29. Plaintiff claims that his complaint was "ignored by Defendant Officer Blummetti." *Id.*, ¶ 34. Hiller contends that rather than conducting a formal investigation of the incident at issue, Blummetti merely gave Sibley "an oral warning for travelling [sic] at a high speed rate on the

3

highway and let her go." *Id.*, ¶ 33.   Plaintiff specifically faults Blummetti for failing to examine the "Black Box" recording of driving data in Sibley's Honda. *Id.*, ¶¶ 30, 54.

## B.   PROCEDURAL POSTURE

Plaintiff commenced this action on August 6, 2012.   In his Complaint, he included three counts against Officer Blummetti and one count against the FPD for alleged violation of his civil rights under the color of law pursuant to 42 U.S.C. § 1983;[3] one count against Officer Blummetti and the FPD for intentional infliction of emotional distress; one count against individual defendant Sibley for traveling at an unreasonable speed and reckless driving; and one count against Blummetti and Sibley for negligence.[4]

Contemporaneously with his Complaint, Plaintiff filed a motion to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915(a)(1), which authorizes a court to allow the commencement and prosecution of an action "without prepayment of fees" by a person who "submits an affidavit," showing that he or she "is unable to pay such fees or give security therefor."   Doc. 2. Plaintiff's motion was referred to Magistrate Judge Joan G. Margolis for a recommended ruling [Doc. 4], which she entered on May 3, 2013 [Doc. 5], denying the motion in light of Plaintiff's assets, as listed on his

---

[3] These counts include, *inter alia*, general allegations of "police misconduct," as well as "unlawful threat to arrest."  *See* Doc. 1, Counts I-III.

[4] In total, there are six Counts, but the Complaint and its Table of Contents both skip number "VI," going from Count V to Count VII. Also, the Court notes that the Table of Contents makes no mention of Count IV against defendant Sibley for traveling at an unreasonable speed and reckless driving. Furthermore, the heading for Count III in the Complaint and its Table of Contents states that it is against Officer Blummetti and "Defendant *WRPD*," an unknown entity. Doc. 1, p. 2, 15 (emphasis added).   The text below that heading in the Complaint, however, addresses the conduct of the "*FPD*."   Doc. 1, ¶ 66 (emphasis added).   The Court thus construes Count III as against Blummetti and the *FPD*.

financial affidavit.[5]   Upon review of Plaintiff's affidavit, this Court adopted the recommended ruling, based on Plaintiff's listed assets and also on the ground that the motion became moot upon Plaintiff's payment of the $400 filing fee on June 4, 2013.  Doc. 6.

Following that payment and to date, Plaintiff has failed to prosecute this action.  He has failed to submit proof of service of process within 120 days of filing the Complaint, as required by Fed. R. Civ. P. 4(m).  In the absence of service, the Defendants have received no official notice of the pending action, and have consequently entered no appearances.  Pursuant to Rule 4(m), Fed. R. Civ. P., if a plaintiff fails to serve the Summons and Complaint within 120 days of filing the action, the court must dismiss the action or order that service be made within an enlarged time.[6]

Unless proper service is made upon the Defendants, this Court lacks jurisdiction over them. In the absence of proper service and personal jurisdiction, "the court would normally dismiss the complaint." *Funches v. Conn. Dep't of Pub. Health*, No. 3:08–CV–1714 (RNC), 2010 WL 122445, at *1 (D.Conn. Jan. 7, 2010).

On January 10, 2014, pursuant to Local Rule 41(a), the Clerk of the Court issued a Notice to Plaintiff that "[i]n civil actions in which no action has been taken by the parties for six(6) months or in which deadlines established by the Court pursuant to Rule 16 appear not to have been met, the Clerk shall give notice of proposed dismissal to counsel of record and pro se parties."  Moreover,

---

[5]   Such assets included, *inter alia*, bi-weekly wages of $1,300, $4,000 in cash "in a checking or savings account," and a property in Tolland, Connecticut valued at $220,000.  Doc. 2 (¶¶ 2, 4, & 5).

[6]   Rule 4(m), Fed. R. Civ. P., provides in relevant part:

If a defendant is not served within 120 days after the complaint is filed, the court – on motion or on its own after notice to the plaintiff – must dismiss the action without prejudice against that defendant or order that service be made within a specified time.

"[i]f such notice has been given and no action has been taken in the action in the meantime and no satisfactory explanation is submitted to the Court within twenty (20) days thereafter, the Clerk shall enter a judgment."

Plaintiff responded to the Rule 41(a) Notice by sending correspondence to the Clerk of the Court, received on January 21, 2014, stating that "[i]t was the court[']s lack of action that caused the laps [sic] in time for this case."  Plaintiff also asserted that he had a "need to know where . . . to reply to these requests" of the Court because he "originally filed in Hartford Federal court but the paperwork generated is coming from New Haven."  Lastly, Plaintiff sought reimbursement of the $400 filing fee should his case be dismissed.

## II.   <u>DISCUSSION</u>

The Court recognizes that because Plaintiff is *pro se* – that is, acting on his own behalf without assistance of legal counsel – Plaintiff may lack pertinent information as to the procedures and Rules of this Court.  He will thus be treated with leniency.  In response to the contents of his letter, Plaintiff is hereby advised that there are three seats of court for this United States District of Connecticut: Hartford, New Haven, and Bridgeport.  Regardless of the location of the Courthouse in which one commences an action, the case is randomly assigned to a Judge within the District.  The location of said Judge's Chambers may be in any of the three Courthouses because this is one unified federal District.  Thus, a case filed in Hartford may, as in the case at bar, be assigned to a Judge who sits in New Haven.  Once the case is assigned to a Judge, the parties must make all manual filings in the Clerk's Office of the Courthouse at which that particular Judge sits – in this case, New Haven. Electronic filings – if a *pro se* plaintiff files the proper request and receives permission to file electronically on the Court's CM/ECF system –  may be made by computer from any location with

internet access.[7]

As to the Court's "lack of action," as perceived by Plaintiff, it is the Plaintiff's duty, once he pays his filing fee, to request that a summons be issued to the defendants in the action.  Until a plaintiff pursues or "prosecutes" his action, a Court cannot act in the case.  A court is neutral.  It neither prosecutes nor defends an action.  The parties do that.  In fact, the Court does not even enter a scheduling order in an action until a defendant has been served and entered an appearance and the parties meet and confer to prepare and submit a Rule 26(f) Report, suggesting proposed cases deadlines for the Court to consider before it sets the case deadlines. *See* D. Conn. L. Civ. R. 26(f).[8]

As described *supra*, it is Plaintiff's duty to take the necessary measures to prosecute his action in a timely manner or face dismissal of his action.  *See* D. Conn. L. Civ. R. 41(a); Fed. R. Civ. P. 41(b).  Also, there is no provision for the refund of a filing fee (*e.g.*, if either a plaintiff withdraws

---

[7]  *See* form for filing "Motion by Pro Se Litigant to Participate in Electronic Filing" on the Court's website at http://www.ctd.uscourts.gov/rules-and-forms.

[8]  Local Rule 26(f) provides:

(1) Within thirty days after the appearance of any defendant, the attorneys of record and any unrepresented parties who have appeared in the case shall confer for the purposes described in Fed. R. Civ. P. 26(f). If a government entity or official is a defendant, the conference shall be held within thirty days after the appearance of any such defendant. The conference shall be initiated by the plaintiff and may be conducted by telephone. Within fourteen (14) days after the conference, the participants shall jointly complete and file a report in the form prescribed by Form 26(f), which appears in the Appendix to these Rules. A copy of the report shall be mailed to the chambers of the presiding Judge.

(2) After the parties' report is filed, the Court will issue a written scheduling order pursuant to Fed. R. Civ. P. 16(b). Until such a scheduling order is issued, the case will be governed by the provisions of the Standing Order On Scheduling In Civil Cases.

D. Conn. L. Civ. R. 26(f)(1)-(2).

his action or his action is dismissed for failure to prosecute).

The Court is mindful of the difficulties and intricacies of legal procedure and thus acts with leniency, where possible, with respect to *pro se* plaintiffs. *See, e.g., Tracy v. Freshwater*, 623 F.3d 90, 101 (2d Cir.2010) ("a court is ordinarily obligated to afford a special solicitude to pro se litigants") (citing, *inter alia, Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). Nonetheless, the Court lacks authority to assist any party in pursuing his action, with or without counsel. The Court, by its nature and role, is duty bound to maintain impartiality at all times. It must enter rulings on the basis of the relevant facts and law in the case. It is thus up to the parties to present and/or defend in the case at hand.

The United States "Supreme Court has recognized the inherent power of a district judge to dismiss a case for the plaintiff's failure to prosecute." *West v. City of New York*, 130 F.R.D. 522, 524 (S.D.N.Y. 1990) (citing *Link v. Wabash R.R. Co.*, 370 U.S. 626, 629 (1962)). *See also Taub v. Hale*, 355 F.2d 201, 201 (2d Cir. 1966) (*per curiam*) ("Under that Rule [Fed. R. Civ. P. 41(b)] and the inherent power of a court to dismiss for failure to prosecute, a district judge may, *sua sponte*, and without notice to the parties, dismiss a complaint for want of prosecution, and such dismissal is largely a matter of the judge's discretion."), *cert. denied*, 384 U.S. 1007 (1966).

In sum, "[i]t is plaintiff's obligation to move his case to trial, and should he fail to do so in a reasonable manner, his case may be dismissed with prejudice as a sanction for his unjustified conduct." *West,* 130 F.R.D. at 524. "Dismissal is warranted where there is a lack of due diligence in the prosecution of the lawsuit by plaintiff."[9] *Id.* (gathering cases). *See also, e.g., Lyell Theatre*

---

[9]   The standard for dismissal appears in Local Rule 41(a) and states in pertinent part:

In civil actions in which no action has been taken by the parties for six (6) months or

*Corp. v. Loews Corp.*, 682 F.2d 37, 43 (2d Cir. 1982) ("The primary rationale underlying a dismissal under [Fed. R. Civ. P.] 41(b) is the failure of plaintiff in his duty to process his case diligently.").

In particular, "[u]nreasonable delay in serving process . . . may constitute a failure to prosecute under rule 41(b)." *Krank v. Express Funding Corp.*, 133 F.R.D. 14, 18 (S.D.N.Y. 1990). *See also Europacific Asset Mgmt. Corp. v. Tradescape, Corp.,* 233 F.R.D. 344, 351 (S.D.N.Y. 2005) ("It is unquestioned that an 'unreasonable' delay in serving process can constitute a failure to prosecute.") (citing *Krank*, 133 F.R.D. at 18); *In re Crysen/Montenay Energy Co.*, 166 B.R. 546, 551 (S.D.N.Y. 1994) (same).

Furthermore, "[a]ll litigants, including *pro se* litigants, are required to comply with court orders, and dismissal of a pro se complaint is justified where the plaintiff willfully fails to obey a direct court order after being warned that sanctions could be imposed for non-compliance." *Mubarak v. Artuz*, No. 96 CIV. 7556(WHP), 1999 WL 980168, at *2 (S.D.N.Y. Oct. 27, 1999) (citations omitted). "A party who seeks to vindicate his rights through the judicial system must at least attempt to play by the rules of that system." *Id.* (quoting *Civil v. New York City Dep't Of Corr.*, No. 91 Civ. 2946 (SS), 1993 WL 51156, at *2 (S.D.N.Y. Feb. 23, 1993 ) (Sotomayor, *J.*)).

## III.  **CONCLUSION**

Dismissal of an action is a severe and drastic sanction which should be invoked sparingly to

---

in which deadlines established by the Court pursuant to Rule 16 appear not to have been met, the Clerk shall give notice of proposed dismissal to counsel of record and pro se parties, if any. If such notice has been given and no action has been taken in the action in the meantime and no satisfactory explanation is submitted to the Court within twenty (20) days thereafter, the Clerk shall enter an order of dismissal.

D. Conn. L. Civ. R. 41(a).

enforce a court's orders. *Mubarak*, 1999 WL 980168, at *2 (citing *Nat'l Hockey League v. Metro. Hockey Club, Inc*., 427 U.S. 639, [643, 1976)], *reh'g denied*, 429 U.S. 874 (1976)).  Moreover, the Court may grant additional leeway to a plaintiff who is *pro se*.  *See Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993) ("A party appearing without counsel is afforded extra leeway in meeting the procedural rules governing litigation, and trial judges must make some effort to protect a party so appearing from waiving a right to be heard because of his or her lack of legal knowledge.").[10]  Therefore,  in light of Plaintiff's *pro se* status, the Court will grant  Plaintiff additional time, to and including **April 30, 2014**, to either prosecute this action or provide the Court with a satisfactory explanation for failure to prosecute.  D. Conn. L. Civ. R. 41(a).  During that time period, he is advised to either contact the Clerk's Office of this Court or access the Court's website (http://www.ctd.uscourts.gov/rules-and-forms )  to  obtain the proper forms to perfect service of process on the named defendants.  If, on or before **April 30, 2014**, Plaintiff fails to take the requisite actions to effect service and/or provide a "satisfactory explanation," the action will be dismissed pursuant to the Federal and Local Rules of this Court.

It is SO ORDERED.

Dated: New Haven, Connecticut
        March 13, 2014

                                     */s/Charles S. Haight, Jr.*
                                     CHARLES S. HAIGHT, JR.
                                     Senior United States District Judge

---

[10]  As  the Second Circuit explained,  "an  understandable zeal for a tidy, reduced calendar of cases should not overcome a court's duty to do justice in the particular case." *Enron Oil Corp.*, 10 F.3d at 96.  It is thus "the responsibility of the trial court to maintain a balance between clearing its calendar and affording litigants a reasonable chance to be heard."  *Id.*