## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

RICHARD M. HILLER,

               Plaintiff,

  v.

FARMINGTON POLICE DEPARTMENT,
Individually; OFFICER JOANNE M.
BLUMMETTI, Individually; and RACHAEL
SIBLEY, Individually,

               Defendants.

3:12 - CV- 1139 (CSH)

**JULY 31, 2015**

### RULING ON MOTION TO DISMISS

**HAIGHT, Senior District Judge:**

### I.  BACKGROUND

Plaintiff Richard M. Hiller brings this action *pro se*, seeking recovery for damages resulting from a motor vehicle incident with individual defendant Rachael Sibley on August 16, 2009 and the subsequent actions of the Farmington Police Department ("FPD") on that date.  In his Complaint, Hiller includes  civil rights claims  arising under 42 U.S.C. § 1983 against FPD Officer Joanne M. Blummetti and the FPD; a variety of state law claims against Sibley for "speeding" and "reckless driving;" intentional infliction of emotional distress against Blummetti and the  FPD; and negligence claims against Blummetti and Sibley.[1]  Due to his § 1983  federal statutory claims, Plaintiff asserts that this Court has "federal question" subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and

---

[1]  As the Court has noted on a previous  occasion, Plaintiff  also  asserts that his action  is "brought pursuant to . . . the laws of the State of Wisconsin." Doc. 1, ¶ 1.  However, he presents no facts, nor does the Court find on the face of the Complaint any basis,  to apply Wisconsin law.

28 U.S.C. § 1343(a)(3).  Doc. 1, ¶ 2.

The Court has previously recounted the facts of this case in its Order entered on March 13, 2014 [Doc. 8], reported at 2014 WL 992790, familiarity with which is assumed.  In short, Plaintiff alleges that on August 16, 2009, at approximately 11:30 a.m., while he and his brother were riding their motorcycles on Routes 84 West and 4 in Farmington, Connecticut, defendant Sibley drove past them in a Black Honda, passing them on the right hand side.  Doc. 1, ¶¶  9-12.  In passing the two motorcycles, Sibley allegedly forced the motorcycles into the left lane, "almost kill[ing] both Plaintiff Hiller and his brother Robert Hiller by her reckless driving." *Id*., ¶¶ 10- 14.  Sibley then allegedly "took off at a speed of 90 MPH." *Id.*, ¶ 14.

Plaintiff further alleges that he immediately pursued Sibley's vehicle to obtain her "vehicle plate number in order to place a police complaint for reckless driving." *Id.*, ¶ 15.  Because Sibley allegedly drove above the speed limit, Plaintiff claims he was forced to ride his motorcycle above the speed limit to "catch up to [her] at the traffic signal." *Id.*, ¶¶ 15- 16. Upon reaching Sibley at a traffic intersection, Plaintiff engaged in a confrontation with Sibley as she climbed from her vehicle to face him.  Plaintiff admittedly "screamed," allowing as Shakespeare might say, "the blast of war [to] blow in [her] ears" with the heated inquiry of whether "she was drunk or on drugs."[2] *Id.* Sibley then allegedly waived her  "clenched fist" at Plaintiff with fury, prompting him to reply in raised voice, "You almost killed us[!]" *Id.*, ¶ 17.  After additional skirmishing, the traffic light changed from red to  green, and Plaintiff departed the scene.  *Id.*, ¶¶ 18-19.

Later that day, Sibley contacted the FPD  to make a complaint against Plaintiff for his conduct during the incident.   Plaintiff alleges that Officer Blummetti "favored Defendant Sibley

---

[2]  William Shakespeare, *Henry V*: Act 3, sc. 1, l. 6.

because she was the first to call the FPD." *Id.*, ¶ 25.

Just before 3:00 p.m., Blummetti phoned Plaintiff at his home to instruct him to visit the FPD to collect a summons that had been issued against him.[3]  Shortly thereafter, a state trooper appeared at Plaintiff's door, further reinforcing the instruction to appear at the FPD to collect the summons. *Id.*, ¶ 20.

Plaintiff and his brother responded by phoning the FPD to offer statements about the Sibley incident to Officer Blummetti.  *Id.*, ¶ 21.   Plaintiff alleges that at that time, Blummetti "threatened [him with arrest] if he did not visit the FPD to collect the summons served on him."  *Id.*, ¶ 22. Blummetti also allegedly asked an "irrelevant question if Plaintiff Hiller grew up with a bunch of Hillers she knew in Tolland County," people with whom Plaintiff believes Blummetti had "some past incident."  *Id.*, ¶¶ 23- 24.   Plaintiff asserts that Blummetti failed to "conduct a professional, non[-]emotional interview" and "showed no concern" that Plaintiff and his brother "were almost killed by Defendant Sibley."  *Id.*, ¶ 35.   Plaintiff further alleges that the FPD failed to adequately train Blummetti regarding interrogation methods and condoned her "indiscriminate acts causing constitutional violations to be perpetrated against [him]."  *Id.*, ¶¶ 38-39.

Finally, at around 4:30 pm, Plaintiff reluctantly appeared at the FPD to file his own complaint regarding Sibley with a second shift police officer.[4]  *Id.*, ¶ 32; *see also id.*, p. 23 ("Statement of

---

[3] Plaintiff  does not describe the charges contained in the summons but, given the circumstances on August 16, 2009, the FPD likely issued the summons as a result of Sibley's complaint regarding Plaintiff's conduct during their confrontation on that date.

[4] Plaintiff thereafter filed a complaint against Officer Blummetti with the FPD for "failing to properly handle a serious motor vehicle violation" by Sibley on August 16, 2009.  *See* Doc. 1, Ex. B. (faxed report by Plaintiff to FPD, with a fax stamp of "07/13/2010").  In that report, Plaintiff accused Blummetti of "taking out some sort of revenge on [him] because of a problem she had with someone with the same last name."  *Id.*, at 1.  He also stated, *inter alia*, that Blummetti "needs to

Richard Hiller" to Officer K. Vincent).   By that time, Blummetti's shift had ended and, as she had indicated on the phone, she would "not be there" and was "not going to wait." *Id.*, ¶ 29.  Plaintiff thus alleges his complaint regarding Sibley was largely "ignored by Defendant Officer Blummetti." *Id.*, ¶ 34. Rather than conducting a formal investigation of the incident, Blummetti merely gave Sibley "an oral warning for travelling [sic] at a high speed rate on the highway and let her go." *Id.*, ¶ 33.   Moreover, Hiller specifically faults Blummetti for failing to examine the "Black Box" recording of driving data in Sibley's Honda, conduct a sobriety test on Sibley, and "check [Sibley's] mobile phone" to see if she was "texting . . . while driving." *Id.*, ¶¶ 30, 34, 36-37, 54.

## II.  DISCUSSION

Pending before the Court is Blummetti's and FPD's joint "Motion to Dismiss" [Doc. 16] Plaintiff's Complaint pursuant to Federal Rules 12(b)(2), 12(b)(5), and 12(b)(6) of Civil Procedure. Specifically, FPD and Blummetti (herein  collectively "Defendants") argue the following eight grounds for dismissal:  insufficient service of process; lack of personal jurisdiction; failure to state a claim (as to Counts I, II, and III under § 1983); qualified immunity of Blummetti (as to Plaintiff's first three counts, under § 1983); statute of limitations as to Plaintiff's claims for intentional infliction of emotional distress and negligence (Counts V and VII); Connecticut General Statute § 52-557n(a)(2) as a bar to Plaintiff's intentional infliction of emotional distress claim against the FPD (Count V); failure to state a claim of intentional infliction of emotional distress in Count V; and the doctrine of governmental immunity as a bar to Plaintiff's negligence claim in Count VII.

Despite the expiration of the prescribed period to object to Defendants' motion, Plaintiff has

---

show a more professional and less emotional response to criminals and look at the whole picture for all involved." *Id.*

filed no responsive papers.  *See* D. Conn. L. Civ. R. 7(a)(1) ("Unless otherwise ordered by the Court, all memoranda in opposition to any motion shall be filed within twenty-one (21) days of the filing of the motion" and "[f]ailure to submit a memorandum in opposition to a motion may be deemed sufficient cause to grant the motion").  In light of  Plaintiff's *pro se* status, the Court does not interpret Plaintiff's failure to respond as consent to the motion and will determine whether "the pleadings provide sufficient grounds to deny the motion."  *Id.*

In addition, the Court notes that Defendants' first argument for dismissal is jurisdictional – lack of personal jurisdiction.   In general, jurisdictional challenges must be addressed before assessing the viability of particular claims because, for example, in the absence of personal jurisdiction and/or a waiver thereof by Defendants, the action may not proceed against Defendants.[5] The Court will thus commence its analysis by considering Defendants' jurisdictional challenge.

## A.   Rule 12(b)(2) - Insufficient Service of Process

### 1.      Standard of Law

Defendants' first argument for dismissal of Plaintiff's Complaint is that Hiller failed to effect proper service upon them and, therefore, the Court lacks personal jurisdiction over them.  Specifically, Defendants claim that Plaintiff never properly served either Officer Blummetti or  the FPD with the Complaint.  In the absence of proper service, a district court lacks personal jurisdiction

---

[5]   Similarly, if  Plaintiff's federal  claims  fail,  there may be no subject matter jurisdiction because the Complaint asserts only "federal question" jurisdiction, pursuant to 28 U.S.C. § 1331. *See, e.g.,  Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1187 (2d Cir.1996) ("While the district court may, at its discretion, exercise supplemental jurisdiction over state law claims even where it has dismissed all claims over which it had original jurisdiction, *see* 28 U.S.C. § 1367(c)(3), it cannot exercise supplemental jurisdiction unless there is first a proper basis for original jurisdiction.").   *See also In re Joint Eastern and Southern Dist. Asbestos Litig.*, 14 F.3d 726, 730 n. 2 (2d Cir.1993); *Cushing v. Moore*, 970 F.2d 1103, 1106 (2d Cir.1992).

over those defendants not properly served. *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59 (2d Cir. 2012).   In addition, "there must be a statutory basis for personal jurisdiction that renders such service of process effective." *Id.*   "The available statutory bases in federal courts are enumerated by Federal Rule of Civil Procedure 4(k)," which provides that "[s]erving a summons . . . establishes personal jurisdiction over a defendant . . . who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located."   673 F.3d at 59-60 (citing *Spiegel v. Schulmann*, 604 F.3d 72, 76 (2d Cir.2010) ("A district court's personal jurisdiction is determined by the law of the state in which the court is located.")). The Court must look to Connecticut law, as well as to the Federal Rules, in determining whether personal jurisdiction may be exercised with respect to Defendants.

"Under Rule 12(b)(5), [Fed. R. Civ. P.,] a party may file a motion to dismiss due to insufficiency of service of process." *Rzayeva v. United States*, 492 F.Supp.2d 60, 74 (D.Conn.2007). "A motion to dismiss pursuant to Rule 12(b)(5) must be granted if the plaintiff fails to serve a copy of the summons and complaint on the defendants pursuant to Rule 4 of the Federal Rules [of Civil Procedure], which sets forth the federal requirements for service." *Id*. (citing *Cole v. Aetna Life & Cas.*, 70 F.Supp.2d 106, 110 (D.Conn.1999)). "Once validity of service has been challenged, it becomes the plaintiff's burden to prove that service of process was adequate." *Rzayeva*, 492 F.Supp.2d at 74 (citing *Cole*, 70 F.Supp.2d at 110).

In particular, pursuant to Rule 4(c), Fed. R. Civ. P., "[a] summons must be served with a copy of the complaint" and "[t]he plaintiff is responsible for having the summons and complaint served within the time allowed by Rule 4(m)," *i.e.*, "within 120 days after the complaint is filed." Moreover, under Rule 4(e), Fed. R. Civ. P., the means of serving an individual from whom a waiver of service

has not been obtained, include  "delivering a copy of the summons and of the complaint to the

individual personally;" " leaving a copy of each at the individual's dwelling or usual place of abode

with someone of suitable age and discretion who resides there;" or "delivering a copy of each to an

agent authorized by appointment or by law to receive service of process."  Fed. R. Civ. P. 4(e)

(2)(A)-(C).

In addition, as to a municipal entity, such as a town  police department, Rule 4(j), Fed. R.

Civ. P.,  dictates that, absent a waiver of service, a local government may be served by "delivering

a copy of the summons and of the complaint to its chief executive officer;" or "serving a copy of each

in the manner prescribed by that state's law for serving a summons or like process on such a

defendant." Fed. R. Civ. P. 4(j)(2)(A)-(B).  With respect to the latter form of service, the applicable

state law, Connecticut General Statute § 52-57(b), sets forth the proper manner of service for

municipalities and for municipal employees.  That statute provides, in relevant part:

> (b) Process in civil actions against the following-described classes of defendants shall
> be served as follows: . . . (5) against a board, commission, *department* or agency *of
> a town,* city or borough, notwithstanding any provision of law, *upon the clerk of the
> town,* city or borough, provided two copies of such *process shall be served upon the
> clerk* and the clerk shall retain one copy and forward the second copy to the board,
> commission, department or agency; . . . and (7) *against an employee of a town*, city
> or borough in a cause of action arising from the employee's duties or employment,
> *upon the clerk of the town,* city or borough, provided two copies of such *process
> shall be served upon the clerk* and the clerk shall retain one copy and forward the
> second copy to the employee.

Conn. Gen. Stat. § 52-57(b)(5), (7) (emphasis added).  Thus, in Connecticut, a municipal department,

such as a  police department, or its employee must be served by service of two copies upon the town

clerk, who retains one copy and forwards the second copy to the department or applicable employee.

Absent proper service, the court lacks jurisdiction over the defendants as parties.   In such

circumstances, "the court would normally dismiss the complaint," *Funches v. Conn. Dep't of Pub. Health*, No. 3:08–CV–1714 (RNC), 2010 WL 122445, at *1 (D.Conn. Jan. 7, 2010).  *See also* Fed. R. Civ. P. 4(m) (court must dismiss  without prejudice or order service after 120 days);  *Eiden v. McCarthy*, 531 F.Supp. 2d 333, 343 (D.Conn. 2008) ("A motion to dismiss pursuant to Rule 12(b)(5) must be granted if the plaintiff fails to serve a copy of the summons and complaint on the defendants pursuant to Rule 4 of the Federal Rules, which sets forth the federal requirements for service.") (citation omitted).

### 2.  Present Facts Regarding Service

#### a.   Service on Officer Blummetti

In the case at bar, there is no indication that Plaintiff requested or obtained a waiver of service from Defendants. Therefore, Plaintiff was required to make service in accordance with Rule 4, Fed. R. Civ. P.

Defendants claim that Officer Blummetti was not properly served with the Complaint under Rules 4(e) or 4(j), Fed. R. Civ. P.,  and/or under Conn. Gen. Stat. § 52-57.  In particular, according to Plaintiff's  return of service, Plaintiff's agent, a state marshal, served Officer Blummetti "by leaving a true and attested copy of the . . . original SUMMONS IN A CIVIL CASE and ORDER, with the Farmington Police Department, at 319 New Britain Avenue, Unionville, CT . . . ." Doc. 10, at 2.  Specifically, he served Blummetti with the summons and the Court's March 13, 2014 Order [Doc. 8] by providing copies to a sergeant in the FPD, "Sgt. Ken Miller." *Id.*

In contravention to Rule 4(e), Plaintiff served no copy of the complaint upon Blummetti. Doc. 16-1, at 10.   In addition, he failed to serve any papers on Blummetti *personally* and further

failed to  "leav[e] a copy of [the summons and complaint] at [Blummetti's] dwelling or usual place of abode with someone of suitable age and discretion who resides there."  *Id*., at 9.  He also failed to "deliver[ ] a copy of each [document] to an agent authorized by appointment or by law to receive service of process," namely the Farmington Town Clerk, as  specified in Conn. Gen. Stat. § 52-57 (b)(7). [6]  Doc 16-1, at 9-10.  *See also* Fed. R. Civ. P. 4(e)(2)(A)-(C).

       **b.**   <u>**Service on the FPD**</u>

With respect to the FPD, because that defendant is a department of the Town of Farmington, service could and/or should have been made by providing two copies of the summons and complaint to either "its chief executive officer;" Fed. R.  Civ. P. 4(j)(2)(A)-(B), or the town clerk, Conn. Gen. Stat. § 52-57(b ).  The return of service reveals that once again, only the summons was served; and said service was not made upon the town clerk, but rather provided to "Sgt. Ken Miller," a sergeant in the FPD.  Doc. 10, at 2.

Under Rule 4(m), Fed. R. Civ. P.,  "[i]f a defendant is not served within [those] 120 days after the complaint is filed, the court – on motion or on its own after notice to the plaintiff –  must dismiss the action without prejudice against that defendant or order that service be made within a specified time."  The court thus lacks jurisdiction over defendants who were not properly served and, after the expiration of 120 days,  must dismiss the action without prejudice or order service by a set deadline.  *See* Fed. R. Civ. P. 4(m);  *Eiden v. McCarthy*, 531 F.Supp. 2d 333, 343 (D.Conn. 2008) ("A motion to dismiss pursuant to Rule 12(b)(5) must be granted if the plaintiff fails to serve a copy of the summons and complaint on the defendants pursuant to Rule 4 of the Federal Rules,

---

[6] *See also* Conn. Gen. Stat. § 52-57(b)(2).

which sets forth the federal requirements for service.") (citation omitted).

### c. **Court's Findings**

From the applicable return of service, the Court concludes that Officer Blummetti was not properly served with the Complaint under Rule 4(e) or 4(j). In particular, the return of service indicates that Bruce Kaz, a state marshal of Hartford County, served the summons for Officer Blummetti on "Sgt. Ken Miller," a sergeant in the FPD; and no copy of the complaint was served upon her at all. Doc. 10, at 2; Doc. 17, at 2. With respect to the FPD, clearly a department of the Town of Farmington, service could and/or should have been made by providing two copies of the summons and complaint to the department's "chief executive officer;" Fed. R. Civ. P. 4(j)(2)(A)-(B), or the town clerk, Conn. Gen. Stat. § 52-57(b). The return of service, however, reveals that said service was made solely on Sergeant Miller of the FPD; and once again, there is no indication that the complaint was served with the summons. Doc. 10, at 2; Doc. 17, at 3. It thus follows that, in the absence of proper service, Defendants assert that "the claims should be dismissed." Doc. 16-1, at 10-11 (citing, *inter alia*, *McGann v. State of New York*, 77 F.3d 672, [674-75] (2d Cir. 1996)).[7]

In its prior Order [Doc. 8], this Court determined that Plaintiff had failed to effect *any* service upon Defendants in this action and had ordered him to "take the requisite actions to effect service" by a stated deadline, April 30, 2014. Doc. 8, at 10. In response to said Order, Plaintiff served the

---

[7] The Court notes that Plaintiff has also failed to properly serve Sibley in that State Marshal Kaz served the summons, but not the complaint upon her. *See* Doc. 10, at 2 ("I [Bruce Kaz] made due and legal service upon the within named nonresident defendant, Rachael Sibley a/k/a Rachael Ann Sibley, by leaving a verified true and attested copy of the within original SUMMONS IN A CIVIL CASE and ORDER; with the office of Denise W. Merrill, Secretary of the State of Connecticut on March 26, 2014" and by thereafter mailing a certified copy of said documents to her at a South Carolina address). The Court abstains from further analysis of defects in service upon Sibley because she is not a movant with respect to the present motion to dismiss.

summons and a copy of that Order upon Officer Blummetti and the FPD in the manners stated above. As *a pro se* litigant, it may be that Plaintiff failed to comprehend the full details of the service requirements under Federal Rule 4 of Civil Procedure and  Conn. Gen. Stat. § 52-57(b ).  He may not have realized the necessity of including  a copy of the complaint in any such service nor the significance of the identity of the person who receives the service.  Alternatively, it is possible that the State Marshal, Bruce Kaz, simply failed to understand his duties with respect to service.

In either event, it would strain credulity to conclude that Plaintiff, who is *pro se*, intentionally incurred the time and expense to secure a marshal's services for the purpose of  effecting imperfect, and thus legally void, service.  Therefore, although Plaintiff has failed to make proper service for the second time, the Court would be inclined, in the interest of justice and exercising leniency toward *pro se* litigants, to  allow Plaintiff one final attempt to make proper service. However, before granting leave to permit such an attempt, the Court will address Defendants' remaining arguments for dismissal to determine whether the Complaint states claims upon which relief may be granted.

## B.   Rule 12(b)(6) - Failure to State A Claim

### 1.   General Standard

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678  (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The  Second  Circuit  has  consistently  adhered  to  the  United  States  Supreme  Court's  seminal

"plausibility" standard set forth in *Iqbal*.[8]  *See, e.g., Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC,* 783 F.3d 395, 401 (2d Cir. 2015).    As discussed more fully *infra*, in evaluating facial plausibility, "[*p*]*ro se* complaints are to 'be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Maki v. New York*, 597 F. App'x 36, 36 (2d Cir. 2015) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir.2006)).

"[T]he purpose of Federal Rule of Civil Procedure 12(b)(6) 'is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits.'" *Halebian v. Berv*,  644 F.3d 122, 130  (2d Cir. 2011) (quoting *Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 155 (2d Cir. 2006) (emphasis omitted)).[9]    "In ruling on a motion pursuant to Fed. R. Civ. P. 12 (b)(6), the duty of a court is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof."  *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 113 (2d Cir. 2010) (citation and internal quotation marks omitted)).   "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim[]."  *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *abrogated on other grounds*, *Harlow v. Fitzgerald*,

---

[8]  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*,  556 U.S. at 678. Thus, "[w]here  a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

[9]  Rule 8 of the Federal Rules of Civil Procedure mandates that a complaint "contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  The pleading standard set forth in Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).  Rule 8 simply "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-79.

457 U.S. 800 (1982). "Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test." *Id. Accord Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013); *DiFolco v. MSNBC Cable L.L.C.,* 622 F.3d 104, 113 (2d Cir.2010).

In deciding whether to grant a Rule 12(b)(6) dismissal, the court "constru[es] the complaint liberally, accepting all [well-pleaded] factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Chase Grp. Alliance LLC v. N.Y.C. Dep't of Fin.*, 620 F.3d 146, 150 (2d Cir. 2010) (citation and internal quotations omitted). "[W]hether a complaint states a plausible claim for relief will [ultimately] . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 663-64. When "well-pleaded factual allegations" are present, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." 556 U.S. at 679. Thus, factual disputes do not factor into a plausibility analysis under *Iqbal* and its progeny.

"Although all allegations contained in the complaint are assumed to be true, this tenet is 'inapplicable to legal conclusions.'" *LaMagna v. Brown*, 474 F. App'x 788, 789 (2d Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678). *See also Amaker v. New York State Dept. of Corr. Servs.*, 435 F. App'x 52, 54 (2d Cir. 2011) (same). The Court is thus not "bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (quoting *Rolon v. Henneman*, 517 F.3d 140, 149 (2d Cir.2008) (internal quotation marks omitted)). Consequently, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

## 2.  *Pro Se* **Complaint**

When the complaint has been filed *pro se*, the plaintiff is "entitled to special solicitude" and the court construes "his pleadings 'to raise the strongest arguments that they suggest.'" *Fowlkes v. Ironworkers Local 40*, __F.3d__, 2015 WL 3796386, at *7 (2d Cir. June 19, 2015) (quoting *Triestman*, 470 F.3d at 477). "[D]ismissal of a *pro se* claim as insufficiently pleaded is appropriate only in the most unsustainable of cases." *Fowlkes*, 2015 WL 3796386, at *7 (quoting *Boykin v. KeyCorp*, 521 F.3d 202, 216 (2d Cir. 2008)). In other words, "however inartfully pleaded, a *pro se* complaint may not be dismissed under Rule 12(b)(6) unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Posr v. Court Officer Shield No. 207*, 180 F.3d 409, 413-14 (2d Cir. 1999) (quoting *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972)).

"At the same time, a *pro se* complaint must allege 'enough facts to state a claim to relief that is plausible on its face.'" *Fowlk*es, 2015 WL 3796386, at *7 (quoting *Twombly*, 550 U.S. at 570). *See also Walker*, 717 F.3d at 124 ("Nonetheless, a *pro se* complaint must state a plausible claim for relief.") (citing *Harris v. Mills*, 572 F.3d 66, 73 (2d Cir. 2009)). In particular, *pro se* litigants are obligated to comply with the minimal standards of notice pleading under Rule 8, Fed. R. Civ. P. *See, e.g., Nielsen v. Rabin*, 746 F.3d 58, 63 (2d Cir. 2014). Ultimately, "the rule in favor of liberal construction cannot save *pro se* litigants who do not present cognizable arguments." *Collins v. Blumenthal*, 581 F. Supp. 2d 289, 291 (D. Conn. 2008).

## 3.  Farmington Police Department ("FPD")

The first named Defendant in this action is the Farmington Police Department, referred to

herein as the "FPD."  With respect to Plaintiff's § 1983 claim against the FPD in Count III, as Judge

Underhill of this District held in *Reed v. Hartford Police Dep't*, No. 3:03CV2147 (SRU), 2004 WL

813028, at *2 (D. Conn. Apr. 6, 2004), a municipal police department is not  subject to suit under

§ 1983.  Due to its particular relevance, I quote from Judge Underhill's discussion in *Reed* as follows:

> A municipality is subject to suit pursuant to 42 U.S.C. § 1983. *See Monell v. Department of Social Services*, 436 U.S. 658, 690 (1978). A municipal police department, however, is not a municipality. Rather, it is a sub-unit or agency of the municipal government through which the municipality fulfills its policing function. *See Cowras v. Hard Copy*, Case No. 3:95cv99 (AHN), slip op. at 25 (D.Conn. Sept. 29, 1997). *Because a municipal police department is not an independent legal entity, it is not subject to suit under section 1983. See id.* Other courts addressing this issue concur that a municipal police department is not a "person" within the meaning of section 1983 and not subject to suit. *See, e.g., Dean v. Barber*, 951 F.2d 1210, 1215 (11th Cir.1992) (affirming district court's dismissal of claims against county sheriff's department because, under state law, sheriff's department lacked capacity to be sued); *Peterson v. Easton Police Dep't Criminal Investigations Divs.*, No. Civ.A. 99–4153, 1999 WL 718551, at *1 (E.D.Pa. Aug.26, 1999) (holding that a police department is not a person within the meaning of section 1983); *Smith-Berch, Inc. v. Baltimore County*, 68 F.Supp.2d 602, 626-27 (D.Md.1999) (citing cases for the proposition that municipal departments, including police departments, are not persons within the meaning of section 1983); *Gaines v. University of Pennsylvania Police Dep't*, No. 97–3381, 1997 WL 624281, at *3 (E.D.Pa. Oct.7, 1997) (holding "as a matter of law, that police departments are purely instrumentalities of the municipality with no separate identity; thus, they are not 'persons' for purposes of § 1983 and not capable of being sued under § 1983."); *PBA Local No. 38 v. Woodbridge Police Dep't*, 832 F.Supp. 808, 825-26 (D.N.J.1993) (citing cases to support statement that courts considering this issue have unanimously concluded that municipal police departments are not proper defendants in section 1983 actions). Accordingly, all claims against the Hartford Police Department are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

2004 WL 813028, at *2 (emphasis added and lateral citations omitted).[10]

---

[10] *See also Martinez v. Winner*, 771 F.2d 424, 444 (10th Cir.1985) (holding that while the city and county of Denver were proper defendants, "[t]he 'City of Denver Police Department' is not a separate suable entity, and the complaint will be dismissed as to it."); *Cahill v. Bensalem Tp. Police Dep't*, No. 14–663, 2014 WL 3557199, at *2 (E.D. Pa. July 17, 2014) ("The claims against the Department pursuant to § 1983 will be dismissed with prejudice because local police departments

In addition to *Reed*, this District has consistently held that "a municipal police department is not subject to suit under section 1983 because it is not an independent legal entity." *Salaman v. Bullock*, No. 3:05CV876(JCH)(HBF) , 2007 WL 879130, at *2 (D.Conn. Mar. 15, 2007) (collecting cases). *See also Ace Partners, LLC v. Town of East Hartford,* No.3:09–CV–1282 (RNC), 2011 WL 4572109, at *7 n. 1 (D.Conn. Sept. 30, 2011) (entering summary judgment on § 1983 claim against East Hartford Police Department because said "Police Department is not an independent legal entity and is therefore not subject to suit under § 1983"); *Weaver v. Good*, No. 3:06-CV-1056(AWT), 2008 WL 509452, at *2 (D.Conn. Feb. 4, 2008) ("A municipal police department is a sub-unit, agency or instrumentality of the municipality through which the municipality fulfills its policing function . . . and . . . [t]hus, . . . is not subject to suit under section 1983") (internal citation omitted).[11]

---

are not 'persons' who can be sued under that statute. A police department is considered a subunit of the city government and not distinct from the government at large because the department is merely a vehicle through which the city fulfills its policing functions.") (citations omitted); *Johnson v. City of Erie, Pa.*, 834 F.Supp. 873, 878-79 (W.D. Pa.1993) (City police department is merely "a vehicle through which the city fulfills its policing functions;" "[t]he numerous courts that have considered the question of whether a municipal police department is a proper defendant in a section 1983 action have unanimously reached the conclusion that it is not") (citation omitted).

[11]    Although the Second Circuit has not squarely addressed the issue of whether a police department cannot be sued under § 1983, it has noted, without criticism, that such an argument has prevailed in the district court. In *Hartlline v. Gallo*, 546 F.3d 95, 99 n. 3 (2d Cir. 2008), the Second Circuit stated as follows:

The district court dismissed all of Plaintiff's claims against the Southampton Police Department on the grounds that, "[u]nder New York law, departments that are merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality and, therefore, cannot . . . be sued." *Hartline v. Gallo*, 2006 WL 2850609, at *8, 2006 U.S. Dist. LEXIS 75849, at *25 (quoting *Davis v. Lynbrook Police Dep't*, 224 F.Supp.2d 463, 477 (E.D.N.Y.2002)). The Plaintiff does not contest this holding of the district court on appeal, and therefore it is waived. *See,*

In sum, because the FPD, as a municipal police department, is not an independent legal entity – not a "person" within the meaning of 42 U.S.C. § 1983 – it is not subject to suit under that statute.[12]  To the extent that Plaintiff's § 1983 claim is asserted against the FPD, that claim will be dismissed.  In particular, Count III for "unlawful police conduct" against the FPD pursuant to 42 U.S.C. § 1983 will be dismissed.

### 4.  Officer Blummetti

The Court next turns to the § 1983 claims asserted against Officer Blummetti in Counts I through III to determine whether any such count "state[s] a claim to relief that is plausible on its face," *Iqbal*, 556 U.S. at 678.  As to these three Counts, Defendants argue that they fail to state claims upon which relief may be granted; and in any event, Blummetti has "qualified immunity" with respect to these claims.  As set forth, *infra*, these two bases for dismissal are related.  In particular, if there has been no violation of a federal statutory or constitutional right, (1) there can be no viable § 1983 claim and (2) a police officer may have qualified immunity while acting in his or her official capacity.  The Court will thus commence its analysis by examining the allegations contained in

---

*e.g., Norton v. Sam's Club*, 145 F.3d 114, 117 (2d Cir.1998).

*See also Martinetti v. Town of New Hartford*, 12 F. App'x 29, 31 n. 1 (2d Cir. 2001) ("The Plaintiffs conceded below that the New Hartford Police Department is not a separate entity that can be sued; therefore, we will proceed, as did the District Court, by treating the Town of New Hartford as the sole defendant.").

[12]The Court notes that Plaintiff's Complaint includes no § 1983 claim against the Town of Farmington.  In any event, there appears to be no basis for municipal liability in this case because "[u]nder the standards of *Monell v. Department of Social Services*, 436 U.S. 658, 98 (1978), a municipality can [only] be held liable under Section 1983 if the deprivation of the plaintiff's rights under federal law is caused by a governmental custom, policy, or usage of the municipality." *Jones v. Town of East Haven*, 691 F.3d 72, 80 (2d Cir. 2012) (lateral citations omitted).   There is no allegation or proof of any municipal custom or policy in the case at bar.

Counts I through III.

### a.  **Counts I through III**

In Count I, Plaintiff alleges that Blummetti violated his "constitutional rights within the meaning of 42 U.S.C. § 1983" by "threatening [him] excessively" and failing to "show any importance to [his] recitation of facts and the complaint he filed against Defendant Sibley with Defendant FPD." Doc. 1, ¶¶ 47-50.  Moreover, Plaintiff alleges that "Blummetti listened and believed only Defendant Sibley's version of the facts and did not conduct a proper investigation with regard to the case." *Id.*, ¶ 50.  With respect to what would have constituted a "fair investigation," Plaintiff alleges that Blummetti should "have had an expert examine the 'Black Box' of Defendant Sibley's Honda car." *Id.*, ¶ 51.  Plaintiff further alleges that Blummetti violated his right to "freedom of speech" when she  "issued a summons to [him]." *Id.,* ¶ 52.  She also allegedly "acted recklessly and with callous indifference toward [him]," thereby violating his "right to life" and "liberty." *Id.*, ¶ 53.  Plaintiff further attributes Blummetti's alleged "misconduct" to "an emotional female connection she felt towards Defendant Sibley."[13] *Id.,* ¶¶ 52-53.

With respect to Count II, Plaintiff alleges that Blummetti violated his constitutional rights under § 1983 by unlawfully "threaten[ing] to arrest him if he did not visit the FPD to collect the

---

[13]  In  his police report to FPD Officer Vincent, Plaintiff suggested that Sibley was crying when she spoke to Blummetti on August 16, 2009:

> Crying by Sibley could have also been from a drug or alcohol induced reaction.  I believe Sibley knew she did something wrong and crying was her guilt reaction for realizing she may be in trouble for her negligence.  She certainly knew how to play on Blummetti's soft spot.

Doc. 1, at 24.

18

summons served upon him" even though he claims "he was not at fault."  *Id.*, ¶ 58.  Moreover, because Blummetti had asked Plaintiff "if there were [a] bunch of Hillers living in Tolland and if he were one of them," Plaintiff believes he was "targeted" and  "harassed"  with  "a threat to arrest." *Id.*, ¶ 62.  Plaintiff asserts that  Blummetti had likely had "some past incident" with someone named Hiller in Tolland."  *Id*.  Due to this "threat to arrest, Plaintiff allegedly suffered "loss of income, loss of promotion[,] and severe mental anguish."  *Id.*, ¶ 63.

Finally, in  Hiller's third § 1983 claim, Count III, he alleges that "all of the above mentioned allegations amount to police misconduct on the part of Defendant Officer Blummetti."  *Id.*, ¶ 69. Once again, Plaintiff references Blummetti's question about "a bunch of Hillers she knew in Tolland," careless handling of his complaint against Sibley, and unlawful threat to arrest him.

The Court will analyze the three § 1983 Counts against Blummetti to determine whether each states a plausible claim under Rule 12(b)(6) and whether Blummetti, as a police officer, has qualified immunity with respect to these claims.

### b.  <u>Section 1983 & Qualified Immunity</u>

"Section 1983 creates a cause of action against any person who, acting under color of state law, abridges 'rights, privileges, or immunities secured by the Constitution and laws' of the United States. 42 U.S.C. § 1983."[14]  *Shakhnes v. Berlin*, 689 F.3d 244, 250 (2d Cir. 2012). Therefore, "[t]o

---

[14]   The text of 42 U.S.C. § 1983 provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

state a claim under 42 U.S.C. § 1983, the plaintiff must show that a defendant, acting under color of state law, deprived him of a federal constitutional or statutory right." *Sykes v. Bank of America*, 723 F.3d 399, 405-06 (2d Cir. 2013) (citing *Rodriguez v. Phillips*, 66 F.3d 470, 473 (2d Cir.1995)). Violations of rights give rise to § 1983 actions; mere violations of laws do not. *Shakhnes*, 689 F.3d at 250 (citing *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002)).

In particular, "[w]ith respect to a section 1983 claim, a plaintiff must prove four elements: (1) actions taken under color of law;   (2) deprivation of constitutional or statutory right; (3) causation; and (4) damages." *Doe v. City of Waterbury*, 453 F.Supp. 2d 537, 542  (D. Conn. 2006) (citing  42 U.S.C. § 1983).[15] Moreover, if the plaintiff  brings a section 1983 claim against a municipality, he or she must prove a fifth element: "that an official policy of the municipality caused her [or him] constitutional injury." *Id.*  (citing *Monell v. Dep't. of Soc. Servs. of the City of New York*, 436 U.S. 658, 690-91 (1978)).

Local governments and municipalities are also "persons" within the meaning of the statute, so that liability may attach to them under section 1983. *Monell*, 436 U.S. at 690.  As to the actions of a municipality's employee, the United States Supreme Court has limited municipal liability under § 1983 by holding that a municipality may not be held  liable based on the vicarious liability theory of respondeat superior.  436 U.S. at 691.  A municipality cannot, therefore, be held liable simply because its employee or agent committed a tort.   *See Bd. of Cnty. Comm'rs of Bryan Cnty., Oklahoma v. Brown*, 520 U.S. 397, 405 (1997).   Rather, a plaintiff must prove that a "municipal policy of some nature caused a constitutional tort." *Id.*

---

[15]  *Aff'd sub nom., Roe v. City of Waterbury*, 542 F.3d 31 (2d Cir. 2008), *cert. denied*, 558 U.S. 933 (2009).

With respect to law enforcement officers, qualified immunity shields them from § 1983 claims for money damages provided that their "conduct does not violate clearly established constitutional rights of which a reasonable person would have been aware." *Zalaski v. City of Hartford*, 723 F.3d 382, 388 (2d Cir. 2013) (citing, *inter alia*, *Ashcroft v. al-Kidd*, __U.S. __, 131 S.Ct. 2074, 2080 (2011)). The Second Circuit has articulated "[t]wo questions [that] inform qualified immunity analysis":

> First, do the facts show that the officer's conduct violated plaintiff's constitutional rights? If the answer to this question is no, further inquiry is unnecessary because where there is no viable constitutional claim, defendants have no need of an immunity shield. But if the answer is yes, or at least not definitively no, a second question arises: was the right clearly established at the time of defendant's actions?

*Zalaski*, 723 F.3d at 388.

### c. __Plaintiff's § 1983 Claims__

In the case at bar, in Counts I to III of his Complaint, Plaintiff alleges that Blummetti and/or the FPD have violated three of his constitutional rights: "freedom of speech," "right to life," and "liberty." Doc. 1, ¶¶ 52-53. To summarize, in Count I, Plaintiff alleges that his First and Fourteenth Amendment rights were violated when Blummetti "threaten[ed] him excessively," failed to afford the proper "importance to [his] recitation of facts and the complaint he filed against Defendant Sibley with Defendant FPD," "listened and believed only Defendant Sibley's version of the facts," and failed to "conduct a proper investigation with regard to the case."[16] *Id.*, ¶¶ 48-50. As to Blummetti's motive in allegedly violating his free speech, Plaintiff states that her "act was based on an emotional

---

[16]   Plaintiff claims that "if Defendant Blummetti would have considered conducting a fair investigation, then she would have had an expert examine the 'Black Box' of Defendant Sibley's Honda car." Doc. 1, ¶ 51. In Plaintiff's estimation, such an examination would have "explain[ed] how negligently Defendant Sibley drove her car." *Id.*, ¶ 54.

female connection she felt toward Defendant Sibley." *Id.*, ¶ 52.

With respect to Count II, Plaintiff alleges that Blummetti unlawfully "threatened to arrest him if he did not visit the FPD to collect the summons served upon him."[17] *Id.*, ¶ 59. Plaintiff further alleges that when he informed Blummetti on the phone that "he wished to file a complaint against Defendant Sibley when he visited the FPD," Blummetti "replied that she did not have time to wait for him."[18] *Id.*, ¶ 61. Plaintiff also states that Blummetti improperly questioned him during the phone conversation, asking "if there were [a] bunch of Hillers living in Tolland and if he were one of them." *Id.*, ¶ 62. He claims that he "was freightend [sic] by the irrelevant question because he believed and felt as if he was targeted specifically by some past incident Defendant Officer Blummetti had with someone named Hiller in Tolland" and that is why she allegedly "harassed him with a threat of arrest." *Id.*, ¶ 62.

Finally, in Count III, Plaintiff repeats his allegations of being threatened with arrest and "questioned . . . about a bunch of Hillers [Blummetti] knew in Tolland." He also once again finds fault in Blummetti's handling of his complaint against Sibley because Blummetti only gave Sibley "an oral warning for . . . speeding." *Id.*, ¶ 68

To state a claim under Section 1983, Plaintiff must allege facts indicating that some official action by Blummetti deprived him of his constitutional rights. *Colombo v. O'Connell*, 310 F.3d 115,

---

[17] The Plaintiff has not presented the Court with a copy of the summons so the Court has no information regarding its contents and no confirmation of actual service upon him. It is likely, however, that the summons was issued to Plaintiff as the result of Sibley's report describing the driving incident and confrontation that occurred on August 16, 2009. Plaintiff alleges that in Sibley's report, she falsely accused him of "bump[ing] [her] vehicle several times." Doc. 1, ¶ 26.

[18] Plaintiff ultimately gave his complaint to another FPD police officer, "K. Vincent," when Plaintiff visited the police station on August 16, 2009. Doc. 1, at 23.

117 (2d Cir. 2002).  He must prove harm.  "[A]llegations which are nothing more than broad, simple and conclusory statements are insufficient" for this purpose.  *Spear v. Town of West Hartford*, 954 F.2d 63, 67 (2d Cir. 1992).

In Plaintiff's three § 1983 Counts, he has failed to set forth sufficient facts to establish that Blummetti violated any of his constitutional rights.   First, Blummetti did not prevent Plaintiff from exercising his right to free speech pursuant to the First Amendment.  To sustain a § 1983 action for violation of one's First Amendment right to free speech, a private citizen must show that the public official's retaliation for such speech led to "actual chilling" of that citizen's speech.  *Zherka v. Amicone*, 634 F.3d 642, 645 (2d Cir. 2011).  *See also Marczeski v. Gavitt*, 354 F.Supp.2d 190, 194 (D.Conn. 2005) ("To succeed on [a] First Amendment retaliation claim, [plaintiff] must show: (1) that the speech or conduct at issue is protected under the First Amendment, (2) that the defendants took adverse action against [him], (3) that there was a causal connection between the protected speech or conduct and the adverse action, and (4) that the defendants' actions chilled the exercise of that right.") (citing *Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003)).

Here, Plaintiff has failed to demonstrate any "actual chilling" of his speech due to actions by Blummetti.  Rather, Plaintiff alleges that Blummetti "listened" to his version of events on the phone, but "believed only Defendant Sibley's version of the facts."  Doc. 1, ¶ 50.  Moreover, Hiller continued to exercise his freedom of speech when he ultimately "place[d] a complaint against Defendant Sibley . . . with a second shift police officer of the FPD" at "around 4:30 PM" on August 16, 2009.  *See* Doc. 1, ¶ 32, &  (Ex. A) ( Plaintiff's "Narrative/Statement Report" to FPD regarding Sibley, filed 8/16/2009).  Plaintiff further exercised his free speech when he later filed a complaint with the FPD about Blummetti's conduct in handling the investigation of the August 16, 2009

incident.   Doc. 1, at 24 (faxed report "To whom it may concern" at the FPD, fax date stamp "07/13/2010").   Plaintiff alleges no facts to support his contention that his speech was chilled. Rather, he spoke out repeatedly  regarding the matter of the incident with Sibley.

Second, Blummetti never  acted to deprive Hiller of his constitutional right to "life," U.S. Const. amend. XIV, or even placed him in danger of losing his life.   Put simply, Plaintiff is alive so that he has not been deprived of his right to life.  This not a wrongful death action brought by an administrator or executor of an estate.  *Cf., Barrett v. United States,*  689 F.2d 324, 332 (2d Cir. 1982) ( a cause of action for wrongful death created by state law is arguably a species of property protected by the Due Process Clause);  *Estate of Smith v. Town of West Hartford*, 186 F.Supp.2d 146, 148 n.1 (D.Conn. 2002)  (explaining that "[u]pon death, . . . the decedent is no longer a "person" under the Constitution or 42 U.S.C. § 1983:" but the administrator or executor of his estate may bring a § 1983 claim to assert his claim for deprivation of life).

Third, Plaintiff was not deprived of his right to liberty.  Plaintiff has made no allegation, and the facts presented do not show,  that he was seized, detained, arrested, or imprisoned.  In particular, Plaintiff does not allege that Blummetti impeded his personal liberty in any way.   Blummetti never brandished a weapon or attempted to physically restrain Plaintiff.   She did not arrest or imprison Plaintiff or use any force against him in any manner.  Rather, accepting as true the facts Plaintiff has alleged and drawing all reasonable inferences in Plaintiff's favor, Blummetti spoke to Hiller on the phone and informed him that he must report to the FPD station to pick up a summons issued against him or else become subject to arrest.  Under such circumstances, courts have held that there has been no deprivation of liberty.  *See, e.g.*, *Zak v. Robertson*, 249 F.Supp.2d 203, 208 (D.Conn.2003) (court found no Fourth Amendment seizure in § 1983 action where there was no "traditional arrest or

seizure," defendants were required to "pick[ ] up the summons and complaint against [them] at a police station," and "had to attend court on one or more occasions" before all charges were dropped.).[19]

Put simply, Blummetti's phone conversation with Plaintiff in no way deprived him of his constitutional rights to life and liberty.  Plaintiff has thus merely set forth conclusory allegations or legal conclusions, which cannot "masquerad[e] as factual conclusions," *Faber,* 648 F.3d at 104.

Lastly, to the extent that Plaintiff alleges a violation of equal protection under the law and/or a lack of due process, he has set forth no allegations to make out either claim.  Doc. 1, ¶¶ 42(a), 43(b)-(c).   In order to prevail on an equal protection claim, the plaintiff must establish that "(1) [he], compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Diesel v. Town*

---

[19]   As the court explained in *Zak*:

> Each [plaintiff] picked up the summons and complaint against him at a police station, each had to attend court on one or more occasions before all charges against him were dropped. No other conditions of release were imposed by the state court. The restraints on the plaintiffs' liberty imposed in this case, therefore, were insufficient as a matter of law to constitute a seizure for the purposes of the Fourth Amendment.

249 F.Supp.2d at 208.  *See also Britton v. Maloney*,  196 F.3d 24,  29 (1ˢᵗ Cir. 1999 )  (no constitutional seizure where summons was issued by mail, the defendant was ordered to appear in court, and the case was subsequently dismissed for failure to prosecute; court found it insufficient that the defendant was "threatened . . . with arrest if he failed to appear."), *cert. denied,* 530 U.S. 1204 (2000), *reh'g denied*, 530 U.S. 1289 (2000); *Nasca v. County of Suffolk*, 933 F.Supp.2d 437, 443 (E.D.N.Y. 2013) (motorist was not subjected to false imprisonment or false arrest during routine traffic stop in which he was issued a summons for failure to wear a seatbelt in violation of New York law, even accepting as true motorist's allegation that police officer threatened him by stating "you never know when at a traffic incident an officer may be required to pull his gun;" officer did not search motorist's person or vehicle, and did not detain motorist any longer than necessary to issue the summons).

*of Lewisboro*, 232 F.3d 92, 103 (2d Cir. 2000) (quoting *LeClair v. Saunders*, 627 F.2d 606, 608 (2d Cir. 1980)). A review of the Plaintiff's complaint reveals that he has not alleged either of these two elements, let alone both.[20] He has not alleged that anyone "similarly situated" was treated differently; nor has he alleged a legally impermissible basis for any such treatment.[21]   Therefore, Plaintiff asserts no viable equal protection claim.

As to a violation of due process, there is no allegation that Plaintiff was subjected to false imprisonment or arrest.   *See, e.g., Roesch v. Otarola*, 980 F.2d 850, 854-55 (2d Cir. 1992). Moreover, there is no allegation of "retaliation" – *i.e.*, that the government "t[ook] negative action against [the plaintiff] because of his exercise of rights guaranteed by the Constitution or federal laws." *Friedl v. City of New York*, 210 F.3d 79, 85-86 (2d Cir. 2000).  Rather, Plaintiff is simply dissatisfied with Blummetti's chosen approach to investigating and resolving the complaints that Sibley and he each made to the FPD about the incident on August 16, 2009.

As Judge Eginton of this District explained in *Roesch*: "A state violates due process when its action offend[s] those canons of decency and fairness which express the notions of justice of English-speaking peoples' [and are] so rooted in the traditions and conscience of our people as to be

---

[20]   "The existence of persons in similar circumstances who received more favorable treatment than the plaintiff is absolutely essential in a class-of-one [equal protection] case, 'to provide an inference that the plaintiff was intentionally singled out for reasons that so lack any reasonable nexus with a legitimate governmental policy that an improper purpose – whether personal or otherwise – is all but certain.'" *Giammatteo v. Newton*, 452 F.App'x 24, 30 (2d Cir. 2011) (quoting *Clubside, Inc. v. Valentin*, 468 F.3d 144, 159 (2d Cir.2006)). Moreover, "class-of-one plaintiffs must show an extremely high degree of similarity between themselves and the persons to whom they compare themselves." *Clubside, Inc.* 468 F.3d at 159.

[21]   *See, e.g., Brown v. City of Oneonta, New York,* 221 F.3d 329, 337 (2d Cir. 2000)  ("For example, if a plaintiff seeks to prove selective prosecution on the basis of his race, he 'must show that similarly situated individuals of a different race were not prosecuted.'") (quoting *United States v. Armstrong*, 517 U.S. 456, 465 (1996)).

ranked as fundamental."  980 F.2d at 854 (internal quotation marks and ellipsis omitted) (citing and

quoting *Rochin v. California*, 342 U.S. 165, 169 (1952)).   In the case at bar, there has been no such

act to offend decency and fairness – no government conduct that "shocks the conscience" or

"offend[s] even hardened sensibilities." *Rochin*, 342 U.S. at 172.  Rather, there has been the exercise

of investigatory discretion by a police officer when faced with conflicting reports regarding a conflict

between  drivers of motor vehicles.

Because deprivation of  a  federal  statutory or constitutional right is a key element to  any

§ 1983 claim, Plaintiff's complaint fails to set forth sufficient factual matter, accepted as true, to

"state a claim to relief" under § 1983 "that is plausible on its face." *Iqbal*, 556 U.S. at  678.   His

§ 1983 claims cannot therefore withstand a Rule 12(b)(6) motion and must be dismissed.

### d.  <u>Qualified Immunity</u>

Alternatively, because Blummetti has engaged in no unlawful conduct or constitutional

violation, she is shielded from  Plaintiff's § 1983 claims by the doctrine of qualified immunity,

mandating dismissal of these three federal claims.  "The doctrine of qualified immunity protects

government officials from liability for civil damages insofar as their conduct does not violate clearly

established statutory or constitutional rights of which a reasonable person would have known."

*Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation marks omitted).   *See also*

*Zalaski*, 723 F.3d at 388 (same); *accord Coggins v. Buonora*, 776 F.3d 108, 114 (2d Cir. 2015)

("Qualified immunity protects public officials from civil liability only 'if (a) the defendant's action

did not violate clearly established law, or (b) it was objectively reasonable for the defendant to

believe that his action did not violate such law.'") (quoting *Salim v. Proulx*, 93 F.3d 86, 89 (2d

Cir.1996)).   The "qualified immunity" standard is "forgiving and protects all but the plainly incompetent or those who knowingly violate the law." *Burgess v. Town of Wallingford*,  569 F. App'x 21, 22 (2d Cir. 2014) (quoting *Amore v. Novarro*, 624 F.3d 522, 530 (2d Cir. 2010)).[22]

In particular, with respect to police officers, "[a] police officer who has an objectively reasonable belief that his [or her] actions are lawful is entitled to qualified immunity." *Okin v. Village of Cornwall–on–Hudson Police Dep't*, 577 F.3d 415, 433 (2d Cir.2009).   *See also Saucier v. Katz*, 533 U.S. 194, 202 (2001) (noting that qualified immunity attaches unless "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted"), *overruled in part on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009). Furthermore, a police officer is entitled to qualified immunity if "officers of reasonable competence could disagree on the legality of the action at issue in its particular factual context." *Walczyk v. Rio*, 496 F.3d 139, 154 (2d Cir. 2007) (internal quotation marks omitted).

When examining "qualified immunity," the court must address two prongs.[23]  First, the court inquires as whether, "[t]aken in the light most favorable to the party asserting the injury, ... the facts

---

[22]   The Second Circuit has specified that the qualified immunity defense may be "asserted on a Rule 12(b)(6) motion as long as the defense is based on facts appearing on the face of the complaint." *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004).  In particular, "[a]n affirmative defense may be raised by a pre-answer motion to dismiss under Rule 12(b)(6), without resort to summary judgment procedure, if the defense appears on the face of the complaint."  *McKenna*, 386 F.3d at 436 (citing *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 74 (2d Cir. 1998)). However, "a defendant presenting an immunity defense on a Rule 12(b)(6) motion . . . must accept the more stringent standard applicable to this procedural route." *McKenna,*  386 F.3d at 436.  Not only must the facts to support the motion appear on the face of the complaint, it must appear beyond doubt that the plaintiff "can prove no set of facts in support of his claim that would entitle him to relief."  *Id.* (quoting *Citibank, N.A. v. K–H Corp.*, 968 F.2d 1489, 1494 (2d Cir.1992)).

[23]   Although the Supreme Court previously required lower courts to examine the two prongs sequentially (*i.e.*, one and then two), the Court has since ruled that a particular order of analysis is "no longer [to] be regarded as mandatory."  *Pearson*, 555 U.S. at 236.

alleged show the officer's conduct violated a constitutional right." *Saucier*, 533 U.S. at 201. Second, the court determines whether the right was "clearly established," which must be analyzed "in light of the specific context of the case, not as a broad general proposition." *Id.* In making this determination, "[o]nly Supreme Court and Second Circuit precedent existing at the time of the alleged violation is relevant in deciding whether a right is clearly established." *Moore v. Vega*, 371 F.3d 110, 114 (2d Cir.2004).

Furthermore, as set forth *supra,* § 1983 provides a civil claim for damages only against a person who, acting under color of state law, deprives another of a right, privilege or immunity secured by the Constitution or the laws of the United States. Section 1983 does not create substantive rights; instead it provides a procedure for redress for the deprivation of rights established elsewhere. *Thomas v. Roach*, 165 F.3d 137, 142 (2d Cir. 1999) (citing *Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985)). To prevail on a § 1983 claim, Plaintiff must establish that Blummetti, acting under color of state law, deprived him of a *statutory or constitutional right* of which a reasonable person would have known.

In the case at bar, as discussed *supra,* the Court finds no alleged facts to support a finding that Blummetti knowingly violated any of Plaintiff's constitutional rights. Taking Hiller's allegations as true for purposes of the motion, Blummetti's alleged conduct includes such actions as "listen[ing] and believ[ing] only Defendant Sibley's version of the facts," failing to conduct a "fair investigation" of the Hiller-Sibley incident on August 16, 2009 (*e.g.*, failing to examine Sibley's vehicle's "black box"), threatening to arrest Plaintiff if he did not collect his summons, and inquiring whether

Plaintiff knew any "Hillers" in Tolland.[24]   None of these allegations indicate that Blummetti knowingly violated Plaintiff's asserted constitutional rights – the right to free speech, life, or liberty.

Blummetti did not prevent Plaintiff from exercising his right to speech pursuant to the First Amendment.  Nor did she threaten Hiller's life or impede his liberty.  She simply spoke to Plaintiff on the phone and instructed him that he must pick up the summons against him or become subject to arrest.[25]  With respect to the summons, in general, "the issuance of a pre-arraignment, non-felony summons requiring a later court appearance, without further restrictions, does not constitute a Fourth Amendment seizure."  *Burg v. Gosselin*, 591 F.3d 95, 98 (2d Cir. 2010).  *See also Tombardi v. Quinones*, No. 3:98-cv-01921 (AVC), 2000 WL 852431, at *5–6 (D.Conn. Mar. 31, 2000) (concluding that issuance of a citation was not an arrest)*; Martinez v. Carr*, 479 F.3d 1292, 1299 (10th Cir.2007) ("[T]he issuance of a citation, even under threat of jail if not accepted, does not rise to the level of a Fourth Amendment seizure.").

Furthermore, verbal threats by police officers, "[a]lthough indefensible and unprofessional,

---

[24]   Plaintiff is also aggrieved that Blummetti only gave Sibley an "oral warning" for speeding in connection with the August 16, 2009 incident.  Doc. 1, ¶ 89.

[25]    When  a  suspect  is  neither  arrested nor detained, but instead is merely summoned to appear in court to answer charges without additional restriction, there is no cognizable Fourth Amendment claim. *See, e.g, Vicknair v. Louisiana Dep't of Wildlife and Fisheries*, No. 6:11–0184, 2013 WL 1180834, at *7 (W.D. La. 2013) (collecting cases).  *See also Bielanski v. Cnty. of Kane*, 550 F.3d 632, 642 (7th Cir. 2008) ("No court has held that a summons alone constitutes a seizure, and we conclude that a summons alone does not equal a seizure for Fourth Amendment purposes. To hold otherwise would transform every traffic ticket and jury summons into a potential Section 1983 claim.").  *See also Karam v. City of Burbank*, 352 F.3d 1188, 1194 (9th Cir. 2003) (A requirement to appear in court "was no more burdensome than the promise to appear a motorist makes when issued a traffic citation"); and *Britton v. Maloney*, 196 F.3d 24, 29–30 (1st Cir. 1999) (issuance of a summons requiring plaintiff to appear in court is insufficient to establish a Fourth Amendment seizure), *cert. denied*, 530 U.S. 1204 (2000).

. . . are not sufficient to state a constitutional violation cognizable under section 1983." *Jermosen v. Coughlin*, 878 F.Supp. 444, 449 (N.D.N.Y.1995).  *See also Bowles v. State*, 37 F.Supp.2d 608, 613 (S.D.N.Y. 1999) ("To the extent [plaintiff] seeks to assert a claim of verbal abuse against [defendant police officer], this Court notes that verbal harassment or threats alone do not constitute a violation of any federally protected right and are therefore not  actionable pursuant to 42 U.S.C. § 1983.").[26]

Finally, accepting as true Plaintiff's allegations that  Blummetti failed to afford the  proper weight to Plaintiff's version of the events on August 16, 2009, and/or failed to conduct an extensive investigation, a police officer, acting in his or her official capacity, must make discretionary decisions every day based on the facts and situations presented.[27] *See, e.g., Galindez v. Miller*, 285 F.Supp.2d 190, 194 (D.Conn. 2003) (holding that "[t]he manner in which a police officer makes an arrest or otherwise intervenes to remove an individual from a residence, including determining what level of force to use under the circumstances, appears to fit within the framework of the day to day discretion exercised by police officers");  *Mikita v. Barre*, No. CV 990430564, 2001 WL 651171, at *3 (Conn.Super. May 22, 2001) (misidentification and subsequent detainment of plaintiff required exercise of judgment by police officers).

---

[26]   In *Bowles*, the  plaintiff alleged that while visiting Riverbank State Park, a New York State Police Officer "harassed and verbally abused" him, arrested him, "pushed and shoved him while conducting a search," "held [him] in a cell for three hours," "issued [him] two summonses for disorderly conduct," and finally released him.  37 F.Supp.2d at 609.  With respect to the police officer's "verbal harassment" of plaintiff, the district court held that such conduct, including "threats," did "not constitute a violation of any federally protected right" and were thus not actionable under § 1983.  *Id.*, at 613.

[27]   "The hallmark of a discretionary act is that  it requires the exercise of judgment." *Lombard v. Edward J. Peters, Jr., P.C.*, 252 Conn. 623, 628 (2000).  Such judgment is inherently subjective and enables a police officer to decide what should be done in a particular situation.

Although such discretionary decisions may later prove less than optimal, or even arguably erroneous, officers are protected by qualified immunity unless they violate clearly-established statutory or constitutional rights of which an objectively reasonable officer would have known. *Pearson*, 555 U.S. at 231. For example, as to whether Blummetti should have reviewed Sibley's vehicle's "black box" and/ or stayed beyond her shift to hear Hiller's version of the facts in person, police "officers of reasonable competence could disagree" as to the necessity of those actions. *Walczyk*, 496 F.3d at 154 (internal quotation marks omitted). Such discretion falls within the scope of qualified immunity.[28]

In sum, determining the proper scope of an investigation and deciding the proper weight to place on particular testimony are considerations within a police officer's reasonable discretion. Asking someone if he has relatives in a particular town, although an unwelcome or even inappropriate personal inquiry, does not violate one's constitutional rights. Also, instructing an individual that he must report to the police station to retrieve a summons issued against him is not a constitutional violation. Were such an instruction viewed otherwise, any warning or direction a police officer might issue would constitute a deprivation of one's constitutional rights.

Moreover, this case is clearly distinguishable from those § 1983 actions in which a police

---

[28]   "The protection of qualified immunity applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Pearson*, 555 U.S. at 231 (citation and internal quotation marks omitted). "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions." *Aschroft v. al-Kidd*, 131 S.Ct. at 2085. "When properly applied, it protects all but the plainly incompetent or those who knowingly violate the law." *Id.* (citation and internal quotation marks omitted).

officer allegedly falsely arrested a plaintiff, falsified evidence, or made false statements.[29]   There are no allegations that Blummetti engaged in any such unlawful conduct.  Blummetti exercised no force against Plaintiff, much less unreasonable force.[30]  At no time did Blummetti prevent Plaintiff from exercising free speech[31] or from retaining his life and liberty.   Even construing the complaint liberally, searching for the strongest arguments it may suggest, the Court concludes that Plaintiff "can prove no set of facts in support of his claim that would entitle him to relief."  *See McKenna,*  386 F.3d at 436.

As the Second Circuit instructed in *Walczyk*, if the court considers, as a threshold question, whether "the facts, viewed in the light most favorable to the plaintiff, show that the officer's conduct violated a constitutional right," and the answer is no, "there is no necessity for further inquiries concerning qualified immunity."[32] 496 F.3d at 154  (quoting *Saucier*, 533 U.S. at 201).   Accepting

---

[29] *See, e.g., Coggins v. Buonora*,  776 F.3d 108, 114 (2d Cir. 2015) (police officer was not entitled to qualified immunity for his alleged conduct in falsifying police reports, making false statements to the district attorney and others, and otherwise fabricating evidence, in connection with arrestee's § 1983 claims for false arrest and malicious prosecution).

[30]  *Cf. Thomas v. Roach*, 165 F.3d 137, 143-44 (2d Cir. 1999) (affirming denial of summary judgment on § 1983 claim that police officer used excessive force when he shot plaintiff while  arresting him, in violation of Fourth Amendment, because material facts remained in dispute as to reasonableness of officers' use of force and thus whether qualified immunity was appropriate).

[31]  *See, e.g., Spears  v.  Town  of  West Hartford*, 954 F.2d 63, 67 (2d Cir. 1992) (plaintiff failed to state § 1983 claim for First Amendment violation where "[t]he complaint offered nothing beyond a bare assertion that the lawsuit 'caus[ed] a chilling effect upon his First Amendment rights of the press and speech'").

[32]  The Court further notes that Plaintiff had no "clear  constitutional  right"  to  dictate, or even intrude upon, the scope of the police department's investigation regarding the motor vehicle incident on August 16, 2009.  Officer Blummetti, acting within the scope of her duties, was required to exercise discretion to determine what investigative actions were merited under the circumstances. She thus acted with the reasonable belief that her actions were lawful. *Walczyk*, 496 F.3d at 154.

as true the facts alleged and drawing all reasonable inferences in Plaintiff's favor, it is clear that Blummetti's conduct comprised no constitutional violation.  Therefore, with respect to Plaintiff's three § 1983 claims against Blummetti (Counts I to III), Blummetti is protected by qualified immunity.  Those claims must be dismissed.

**C**.  **Original and Supplemental Jurisdiction**

Because all of Plaintiff's § 1983 claims are dismissed via this Ruling, there remains no independent basis for this Court to exercise "original jurisdiction."  Federal courts are courts of limited jurisdiction pursuant to Article III of the Constitution.  District courts "shall have original jurisdiction" under two circumstances:  (1) if the plaintiff sets forth a colorable claim arising under the Constitution or federal statute, creating "federal question" jurisdiction, 28 U.S.C. § 1331; and/or (2) if there is complete diversity of citizenship between plaintiff and all defendants and the amount in controversy exceeds $75,000, exclusive of interest and costs,  28 U.S.C. § 1332(a)(1).[33]

In the case at bar, the Complaint states that jurisdiction is based solely on "federal question" jurisdiction pursuant to 28 U.S.C. § 1331, which provides that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."[34]  *See* Doc. 1, ¶ 2.   Plaintiff thus states that "[t]his action is brought pursuant to 42 U.S.C.

---

[33]   Diversity of citizenship relates to the whole complaint  – the aggregate of claims – rather than a particular claim.  *Wolde-Meskel v. Vocational Instruction Project Comty. Servs., Inc.*, 166 F.3d 59, 62 (2d Cir. 1999) ("the diversity statute confers jurisdiction over "civil actions" rather than specific claims alleged in a complaint").  Thus, if the parties are diverse as to some claims, but not others, there is no "diversity of jurisdiction" as to the action. *See, e.g., E.R. Squibb & Sons, Inc. v. Accident & Cas. Ins. Co.*, 160 F.3d 925("It is axiomatic that, for diversity jurisdiction to be available, all of the adverse parties in a suit must be completely diverse with regard to citizenship.").

[34]   Plaintiff also  cites  28 U.S.C. § 1343(a)(3), which  grants district courts "original jurisdiction" over  civil  rights actions "[t]o redress the deprivation, under color of any State law,

§ 1983," for violation of his rights under the "First" and Fourteenth Amendments of the United States Constitution."[35]  Doc. 1, ¶ 1.[36]

Furthermore, there appears to be no alternative basis upon which this Court has original jurisdiction over this action because there is no complete "diversity of citizenship" between Plaintiff and all Defendants. 28 U.S.C. § 1332(a).  *See, e.g., St. Paul Fire and Marine Ins. Co. v. Universal Builders Supply*, 409 F.3d 73, 80 (2d Cir.2005) ("Diversity is not complete if any plaintiff is a citizen of the same state as any defendant.").  The facts alleged by Plaintiff indicate that one or more Defendants are citizens of the same state, Connecticut.  The allegations demonstrate the parties' citizenship at the "time of filing" of the Complaint, the operative date for determining citizenship for diversity purposes.  *Wolde-Meskel v. Vocational Instruction Project Comty. Servs., Inc.*, 166 F.3d 59, 62 (2d Cir. 1999) ("Satisfaction of the § 1332(a) diversity requirements (amount in controversy and citizenship) is determined as of the date that suit is filed—the 'time-of-filing' rule.").

In the Complaint, Plaintiff alleges that, as of the commencement of the action, he was "located at 285 Babcock Road, Tolland and Connecticut," Doc. 1, at 5 (¶ 4).  He was likely domiciled in, and thus a citizen of, Connecticut.  *See  Palazzo v. Corio*, 232 F.3d 38, 42 (2d Cir.

---

statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States."

[35]  It remains a mystery to the Court as to why Plaintiff alleges that the action is also brought pursuant to "the laws of the State of Wisconsin." Doc. 1, ¶ 1.

[36]  Although Plaintiff does not mention jurisdiction over the state law claims in his Complaint, 28 U.S.C. § 1367(a) provides a basis upon which a district court may exercise "supplemental jurisdiction" over the state law claims if the court has original jurisdiction over the action and the state law claims are "so related to [the federal] claims in the action that they form part of the same case or controversy."

2000) (an individual's citizenship for diversity purposes is determined by his or her domicile);

*Martinez v. Bynum*, 461 U.S. 321, 331 (1983) ("In general, the domicile of an individual is his true,

fixed and permanent home and place of habitation" – *i.e,* "the place to which, whenever he is absent,

he has the intention of returning.").

Similarly, Plaintiff described Officer Blummetti as "located at 319 New Britain Avenue,

Unionville, Connecticut" and Sibley as "located at 620 Center St[reet], Manchester, CT."  Doc. 1,

at 5 (¶¶ 6-7).  Therefore, one or both of the individuals defendants appear to be domiciled in, and

thus citizens of, Connecticut for diversity purposes.[37]

Lastly, the FPD is a department of the Town of Farmington in the State of Connecticut.  For

purposes of diversity jurisdiction, a municipal corporation, is considered a citizen of the state which

created it.  *See Illinois v. City of Milwaukee,* 406 U.S. 91, 97 (1972) ("It is well settled that for the

purposes of diversity of citizenship, political subdivisions are citizens of their respective States.").

A police department is a subdivision of such a municipal corporation.  *See, e.g.,  Gray v. Internal*

---

[37] State Marshal Kaz indicated in his return of service that Sibley is a "named non-resident defendant," and that he served her by certified mail at 947 Nabors Drive, Charleston, South Carolina.  Doc. 10, at 2.  It may be that she moved from Manchester, Connecticut to Charleston, South Carolina after this action commenced.  Due to the "time of filing" rule, however, a party's change of domicile neither creates nor destroys diversity of citizenship. *See*, e.g., *Wolde-Meskel,* 166 F.3d at 62 (explaining that post-filing events have no effect on federal diversity jurisdiction); *Linardos v. Fortuna,* 157 F.3d 945, 947 (2d Cir.1998) (noting that the time-of-filing rule applies in the citizenship context).  Therefore, if Sibley was domiciled in Connecticut at the time of filing, she is a citizen of Connecticut for diversity purposes.

Furthermore, even if Sibley were domiciled in, and thus a citizen of,  South Carolina when this action commenced, diversity would still not exist in this matter.  Because the Plaintiff's citizenship must be diverse from that of *all* Defendants, there would be no diversity in light of the Connecticut citizenship of other Defendants, Blummetti and the FPD.  *See, e.g., St. Paul Fire and Marine Ins. Co. v. Universal Builders Supply*, 409 F.3d 73, 80 (2d Cir.2005) ( "Diversity is not complete if any plaintiff is a citizen of the same state as any defendant.").

*Affairs Bureau*, 292 F. Supp. 2d 475, 477 n. 1 (S.D.N.Y. 2003) (to the extent that plaintiff brought "diversity claims against defendants" which were "units within the New York City Police Department, such diversity claims [were] dismissed as these defendants are subdivisions of the City of New York, a citizen of the State of New York for diversity purposes") (citing *Moor v. Alameda County*, 411 U.S. 693, 717 (1973)); *Richardson v. F.B.I.*, No. 4:11–10–RBH–SVH, 2011 WL 1428968, at *2 (D.S.C. Mar. 8, 2011) (court had "no diversity jurisdiction" over case "because Plaintiff and all of the named Defendants," including "the city police department," were citizens of the same state). Like Plaintiff, the FPD is a citizen of Connecticut, a fact which destroys diversity subject matter jurisdiction.

In sum, there was no "diversity of citizenship" original jurisdiction over this action. The Court had "federal question" original jurisdiction over the § 1983 claims and supplemental jurisdiction over the state law claims. *See, e.g.*, *Air China, Ltd. V. Kopf*, 473 F.App'x 45, 48 (2d Cir. 2012) (Where the § 1983 claims "anchored federal question jurisdiction," the state law claims may go "forward via supplemental jurisdiction.").

However, now that the § 1983 claims are dismissed in this Ruling, the Court may, and in fact should, decline to exercise supplemental jurisdiction over the state law claims. *See, e.g., Ross v. Corr. Officers John and Jane Does 1-5*, __F.App'x__, 2015 WL 4393525, at *3 (2d Cir. July 20, 2015) (Because we hold that [defendant corrections officer] is entitled to qualified immunity on Ross's federal [§ 1983] claims, we also direct dismissal of the supplemental state law claims, pursuant to 28 U.S.C. § 1367(c)(3)") (citing *Martinez v. Simonetti*, 202 F.3d 625, 636 (2d Cir. 2000)); *Martinez v. Simonetti*, 202 F.3d 625, 636 (2d Cir. 2000) ("Because the federal [§ 1983] claims against [the defendant police officers] must be dismissed, we also direct dismissal of the

supplemental state law claims for false arrest, false imprisonment, and malicious prosecution, pursuant to 28 U.S.C. § 1367(c)(3)."); *Castiglione v. Papa*, 423 F.App'x 10, 13 (2d Cir. 2011) ("Having dismissed [plaintiff's] only federal law claims [for failure to state a claim under Rule 12(b)(6)], the District Court should have declined to exercise supplemental jurisdiction over her remaining state law claims.").

Pursuant to  28 U.S.C. § 1367(a), "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."[38]  Section (c)(3) of that statute specifies, however, that   "[t]he district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if – . . . the district court has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3).

As the Second Circuit articulated in *Castellano v. Board of Trustees of Police Officers' Variable Supplements Fund*, 937 F.2d 752, 758 (2d Cir. 1991) , once "the district court dismissed the federal claims, . . .  there remains no independent basis for federal jurisdiction."  "Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." *Id.* (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) and citing 28 U.S.C. § 1367(c)(3) (giving district courts discretion to decline to exercise supplemental jurisdiction where "the district court has dismissed all claims over which

---

[38]   28 U.S.C. § 1367, captioned "Supplemental jurisdiction," codified  the common law doctrine formerly termed "pendent jurisdiction."  *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966).  Section 1367 "appl[ies] to civil actions commenced on or after [Dec. 1, 1990]." Pub.L. No. 101–650 § 310(c), 104 Stat. 5114 (1990).

it has original jurisdiction")).

Although recognizing that supplemental jurisdiction is discretionary in nature, the Second Circuit has consistently held that, upon dismissal of the claims giving rise to federal jurisdiction, it is an abuse of discretion not to decline to jurisdiction over the state law claims. *See, e.g., Pension Benefit Guaranty Corp. ex rel. St. Vincent Catholic Medical Centers Retirement Plan v. Morgan Stanley Investment Management Inc.,* 712 F.3d 705 (2d Cir. 2013) (appellate court upholds district court's decision to decline to exercise supplemental jurisdiction after reviewing said decision for "abuse of discretion"); *Castiglione v. Papa*, 423 F.App'x 10, 13 (2d Cir. 2011) ("Having dismissed [plaintiff's] only federal law claims [for failure to state a claim under Rule 12(b)(6)], the District Court should have declined to exercise supplemental jurisdiction over her remaining state law claims."); *Powell v. Gardner*, 891 F.2d 1039, 1047 (2d Cir.1989) ("[I]n light of the proper dismissal of the § 1983 claim against [the defendants], the district court should have declined to exercise pendent jurisdiction over [the plaintiff's] state-law claims. . . .").[39]

---

[39] The Court also notes that the absence of federal claims may implicate a lack of "federal question" subject matter jurisdiction. However, "[b]ecause of the more-than-occasional difficulties involved in parsing a claim alleging federal question jurisdiction to determine whether it fails to state a claim or fails to meet jurisdictional requirements, the federal courts have followed a general practice of granting jurisdiction in most cases and dismissing for lack of subject matter jurisdiction only under narrow circumstances." *Nowak v. Ironworkers Local 6 Pension Fund,* 81 F.3d 1182,1188 (2d Cir. 1996).

As the Second Circuit explained in *Giammatteo v. Newton*, 452 F.App'x 24 (2d Cir. 2011), "the Supreme court has warned that '[j]urisdiction . . . is not defeated . . . by the possibility that the averments might fail to state a cause of action on which petitioners could actually recover." 452 F.App'x at 29 (quoting *Hagans v. Lavine*, 415 U.S. 528, 542 (1946)). "Rather, 'failure to state a proper cause of action calls for a judgment on the merits and not for a dismissal for want of jurisdiction.'" *Id.* (quoting *Hagans*, 415 U.S. at 542).

Moreover, when a district court dismisses for failure to state a claim, versus lack of subject matter jurisdiction, that dismissal has *res judicata* effect, which bars the plaintiff from re-filing the

In the case at bar, the federal § 1983 claims were the only basis upon which the Court had "original jurisdiction" in this action. Upon dismissing these claims, the Court will follow well-settled precedent to decline to exercise supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(c)(3). *See Ross v. Corr. Officers John and Jane Does 1-5*, __F.App'x__, 2015 WL 4393525, at *3 (2d Cir. July 20, 2015) (mandating dismissal of state law claims by district court once judgment was entered for correction officer on § 1983 claims due to qualified immunity).

### III.   CONCLUSION

Defendants' "Motion to Dismiss" [Doc. 16] Plaintiff's Complaint pursuant to Federal Rules 12(b)(2), 12(b)(5), and 12(b)(6) of Civil Procedure is GRANTED. Pursuant to Rule 12(b)(5), Plaintiff failed to effect proper service of the summons and complaint upon Defendants Blummetti

---

claims (*i.e.*, litigating a second lawsuit on the same claim with the same parties). The Second Circuit clarified this distinction in *Nowak*, as follows:

> In most circumstances, it makes little practical difference whether the district court correctly labels its dismissal of an action as one for lack of subject matter jurisdiction under Rule 12(b)(1) or for failure to state a claim under Rule 12(b)(6). However, there are two important characteristics of a dismissal based on lack of subject matter jurisdiction that can have a great impact on the disposition of a case. First, because a dismissal pursuant to Rule 12(b)(1) is not on the merits, it can have no res judicata effect. *Exchange Nat'l Bank v. Touche Ross & Co.*, 544 F.2d 1126, 1130–31 (2d Cir.1976), *modified on other grounds*, 726 F.2d 930 (2d Cir.1984), *cert. denied*, 469 U.S. 884 (1984). Second, since a court must have original jurisdiction in order to exercise supplemental jurisdiction, a dismissal pursuant to Rule 12(b)(1) precludes a district court from exercising supplemental jurisdiction over related state claims.

81 F.3d at 1188 (brackets omitted).

In this Ruling, the Court has followed the "preferable practice . . . to assume that jurisdiction exists and [then] proceed to determine the merits of the claim pursuant to Rule 12(b)(6). 2A James W. Moore, *et al.*, Moore's Federal Practice ¶ 12.07[2.–1], at 12–60 (2d ed.1995) (brackets omitted). Dismissal of the § 1983 claims is thus a dismissal on the merits.

and FPD.   Consequently, pursuant to Rule 12(b)(2), this Court lacks personal jurisdiction over the Defendants, which constitutes a proper basis for dismissal of the action against them.   Normally, however, in the interest of leniency, the Court would grant additional time for the *pro se* Plaintiff to attempt proper service upon Defendants.   However, as set forth *supra*, such service would be futile.

All three of Plaintiff's federal claims, which are asserted pursuant to 42 U.S.C. ¶ 1983, fail to state viable claims under Rule 12(b)(6), Fed. R. Civ. P.   In other words, "[P]laintiff can prove no set of facts in support of his [§ 1983] claim[s] which would entitle him to relief."   *Posr,* 180 F.3d at 413-14.   Plaintiff's § 1983 claims are DISMISSED on the grounds that: (1) the FPD, as a municipal police department, is not an independent legal entity – not a "person" within the meaning of 42 U.S.C. § 1983 – and thus not subject to suit under that statute; *Reed,* 2004 WL 813028, at *2; and (2) Officer Blummetti, as a police officer, is protected by qualified immunity from liability for civil damages in these § 1983 claims insofar as her alleged conduct did not violate clearly established statutory or constitutional rights of which a reasonable person would have known," *Pearson*, 555 U.S. at 231.

Furthermore, even if either Defendant were properly subject to suit under § 1983, none of Plaintiff's alleged facts establish that he was deprived of any statutory or constitutional right by Defendants.   Because deprivation of such rights is a key element to any § 1983 claim, Plaintiff complaint fails to set forth sufficient factual matter, accepted as true, to "state a claim to relief" under § 1983 "that is plausible on its face."   *Iqbal*, 556 U.S. at 678.

Granted, Plaintiff may hold a sincere belief that his description of the events of August 16, 2009 was not afforded proper weight by Officer Blummetti.   Moreover, he may firmly believe that he should not have been issued a summons, instead of an oral warning.   He may also disagree with

41

the scope and manner in which Blummetti conducted an investigation of the facts regarding the motor vehicle incident with Sibley.  Unfortunately, not all wrongs are subject to constitutional protection.[40]  A certain degree of discretion is necessarily  inherent in a police officer's job, within the limits of statutory and constitutional law.  Here, Blummetti exercised her discretion, crediting Sibley's report that Plaintiff "bumped [the front of her] vehicle several times."  Doc. 1, ¶ 26. According to Plaintiff, Blummetti "trusted" Sibley's "emotional statements," and thus believed that a summons should issue against him and an oral warning against Sibley.  *Id.*   Accepting Plaintiff's allegations as true, Blummetti acted within the bounds of qualified immunity.

In sum, Plaintiff's § 1983 claims cannot withstand a Rule 12(b)(6) motion.  Accordingly, Counts I through III of Plaintiff's Complaint are DISMISSED.[41]

Having dismissed  all federal claims in this action, the Court lacks an independent basis for federal jurisdiction, and will thus decline to exercise supplemental jurisdiction over Plaintiff's state law claims. *See* 28 U.S.C. § 1367(c)(3).   A district court may decline to exercise supplemental jurisdiction once it has dismissed all claims over which it has original jurisdiction. *Id.*[42]   In

_____

[40]   For example, Plaintiff may, as he alleges, feel "traumatized" by the FPD's approach in handling his case. Doc. 1, ¶ 44.  After August 16, 2009, he may also have lost five days of work and/or a promotion and suffered from "humiliation" and a "spoiled reputation" among work colleagues due to the issuance of the summons.  *Id.*, ¶ 42 (c)-(f).  Sadly, under the law, only actionable injuries are compensable.  Section 1983 affords no relief in the absence of federal statutory or constitutional violation.

[41]   The  Court  notes  that  these  § 1983  claims  were  not  brought against the remaining defendant, Rachel Sibley, in that she is a private citizen – *i.e.*, not a public official.

[42]   *See, e.g.*, *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988) ("in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine – judicial economy, convenience, fairness, and comity – will point toward declining to exercise jurisdiction over the remaining state-law claims"); *Lundy v. Catholic Health System of Long Island Inc.*, 711 F.3d 106, 117-18 (2d Cir. 2013) ("Once

dismissing the state law claims, the Court follows statutory law, 28 U.S.C. § 1367(c)(3), and well-established precedent.  *See United Mine Workers v. Gibbs*, 383 U.S. 715, 716 (1966) ("Certainly, if the federal claims are dismissed before trial . . . the state claims should be dismissed."); *Ross v. Corr. Officers John and Jane Does 1-5*, __F.App'x__, 2015 WL 4393525, at *3 (2d Cir. July 20, 2015) (where summary judgment was properly entered for defendant corrections officer on § 1983 claim due to "qualified immunity," Second Circuit remanded "with the direction that the District Court decline to exercise supplemental jurisdiction and dismiss the state law claims without prejudice."); *Castellano v. Bd. of Trs. of Police Officers' Variable Supplements Fund*, 937 F.2d 752, 758 (2d Cir. 1991) ("Since the district court dismissed the federal claims, . . . there remains no independent basis for federal jurisdiction" so that "the state claims should be dismissed as well.") (citation and internal quotation marks omitted).  *See also  Spear v. Town of West Hartford*, 771 F.Supp. 521, 530 (D.Conn.1991) ("absent unusual circumstances, the court would abuse its discretion were it to retain jurisdiction of the pendant state law claims on the basis of a federal question claim already disposed of"), *aff'd*, 954 F.2d 63 (2d Cir. 1992), *cert. denied*, 506 U.S. 819 (1992).

Plaintiff's Complaint is DISMISSED in its entirety.  Plaintiff's federal § 1983 claims in Counts I, II, and III are dismissed *with prejudice* in that they are fatally defective on their face.  His state law claims in Counts IV, V, and VII are, however,  dismissed *without prejudice* to Plaintiff's filing them in state court.[43]   In so holding, the Court voices no opinion as to the merits or timeliness

---

all federal claims have been dismissed, the balance of factors will 'usual[ly]' point toward a declination.") (citing *Carnegie-Mellon Univ.*, 484 U.S. at 350 n.7).

[43]   The Court clarifies that Plaintiff included no Count VI in his Complaint.  Thus, when numbering his Counts, he went from "V" to "VII," thereby  omitting any "VI."

of the state law claims. The Clerk is directed to close the file.

It is SO ORDERED.

Dated: New Haven, Connecticut
         July 31, 2015


                              /s/Charles S. Haight, Jr.
                              CHARLES S. HAIGHT, JR.
                              Senior United States District Judge